**Ronald HOFFMANN, Appellant,**

v.

**Gene WILTSCHECK, et al., Courtland Truck Center, et al., Respondents.**

No. C5–87–521.

Court of Appeals of Minnesota.

Sept. 15, 1987.

Review Denied Nov. 13, 1987.

Ross Muir, Daniel J. Heuel, Rochester, for Hoffmann.

Richard T. Rodenberg, New Ulm, for Wiltscheck, et al.

William M. Schade, New Ulm, for Courtland Truck Center, et al.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN,\* JJ.

## OPINION

CRIPPEN, Judge.

Based on a *Pierringer* release of an active tortfeasor, the trial court granted summary judgment in favor of respondent Dave Machau, an alleged owner of the vehicle driven by the settling defendant. We affirm.

## FACTS

In August 1983, when appellant Ronald Hoffmann was walking on a county road, he was severely and permanently injured after being struck by a truck driven by Gene Wiltscheck. Oscar Reinhart was the registered owner of the truck, but there is evidence that respondent Dave Machau had become the owner in fact of the vehicle. The record indicates that Machau's ownership arose in the course of doing business as Courtland Truck Center. For purposes of the summary judgment motion, respondent admits he was the owner of the vehicle and admits Wiltscheck was driving the truck at the time of the collision with respondent's consent.[1]

On September 9, 1986, appellant settled his claims against Gene Wiltscheck and Oscar Reinhart for $100,000, the total sum of insurance provided in a policy purchased by Reinhart for the vehicle. In a *Pierringer* release, appellant agreed he would not prosecute any claim against Wiltscheck, Reinhart or Reinhart's insurer. Appellant agreed that Reinhart and Wiltscheck were

> discharged of their liability for contribution with respect to claims of Ronald Hoffmann to the extent of that percentage of their [sic] total claim for damages arising against all parties arising out of the accident of August 7, 1983, which

shall hereafter, by further trial or other disposition of this or any other cause of action, be determined to be the percentage of causal negligence or causal responsibility for which Oscar Reinhart and/or Gene Wiltscheck are found to be liable.

In addition, the *Pierringer* release contained the following agreement for appellant's indemnification of Reinhart and Wiltscheck:

> Ronald Hoffmann specifically agrees to hold Oscar Reinhart and Gene Wiltscheck harmless and specifically agrees to indemnify them from any claims, demands, or cause of action by David Machau and Courtland Truck Center for apportionment in District Court proceedings in Brown County District Court by way of contribution or indemnification whether such claim is alleged to arise by reason of judgment, settlement or otherwise.

The parties to the *Pierringer* release stated an intention to preserve appellant's claims against David Machau. The agreement provided:

> This Pierringer Release and Indemnity Agreement is not entered into, nor in any way intended, to release any claim or cause of action by Ronald Hoffmann against David Machau or Courtland Truck Center or any other person, firms, contributions or entities except Oscar Reinhart and Gene Wiltscheck for damages sustained as a result of the August 7, 1983, accident.

There is evidence that David Machau's business carried a fleet policy of insurance providing $300,000 liability coverage for all owned vehicles. There is also evidence that appellant suffered damages much greater than the amount received in his settlement with Wiltscheck and Reinhart. Shortly after learning of the September

---

\* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

Minn.Stat. § 170.54 (1982).

settlement, however, respondent Machau moved for summary judgment, claiming that appellant's release agreement with Wiltscheck and Reinhart destroyed appellant's cause of action against Machau. On October 16, 1986, the trial court granted summary judgment for respondent.

The trial court adopted respondent's rationale:

> Whatever judgment [appellant] obtains against him [Machau], he may recover from Wiltscheck by way of his right to indemnity and whatever Wiltscheck must pay him as indemnity [appellant] must pay to Wiltscheck by reason of the release.

The trial court observed that Machau's liability was wholly vicarious—that he was "only liable to the extent of Wiltscheck's liability." [2] The court further noted that the parties to the release could not deny Machau his right for indemnification from Wiltscheck. The court noted that any liability of Machau for damages would necessarily deny him his right of indemnification.

The trial court denied appellant's motion to reconsider and vacate its order for summary judgment. This appeal is from the summary judgment entered in December 1986.

## ISSUE

Did the trial court err in concluding that appellant's release destroyed his cause of action against respondent?

## ANALYSIS

We are to determine on appeal from a summary judgment whether there are any genuine issues of material fact and whether the trial court erred as a matter of law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). There were no disputed facts related to the trial court's summary judgment, and we must determine whether the court correctly determined the law of the case.

In concluding a settlement with the driver and registered owner of a motor vehicle, appellant agreed to indemnify them against any contribution or indemnity claims that others might assert against them. The Minnesota Supreme Court has approved this agreement, the so-called *Pierringer* release, as a means to permit trial of unsettled claims after dismissal of defendants who have settled. *See Frey v. Snelgrove,* 269 N.W.2d 918, 921–23 (Minn.1978). The plaintiff's indemnification of the settling tortfeasor is the indispensable characteristic of the *Pierringer* release because it protects the nonsettling defendant from having to pay more than its share of liability. *Id.* at 921; *see* Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L.Rev. 1, 19–23 (1977).

■ It is unquestioned here that respondent's prospective liability is solely as the principal for the acts of an agent. *See* Minn.Stat. § 170.54 (1982) (a vehicle operator is "deemed the agent" of an owner who consents to the operator's use of the vehicle). It is well-established in Minnesota that a principal who pays damages for the acts of an agent is entitled to indemnification from the agent. *See Northern Pacific Railway Co. v. Minnesota Transfer Railway Co.,* 219 Minn. 8, 12, 16 N.W.2d 894, 896 (1944); *see also Hendrickson v. Minnesota Power & Light Co.,* 258 Minn. 368, 372, 104 N.W.2d 843, 848 (1960) (indemnity rights of one with only a derivative or vicarious liability), *overruled in part, Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977). Also, an owner who pays damages under Minn.Stat. § 170.54 is entitled to indemnity from the operator of the vehicle:

> We therefore hold that, where the owner of an automobile has become liable to a third person injured by one to whom the owner has granted permission to drive his car solely by virtue of the Financial Responsibility Act (Minn.Stat. ch. 170), there was no independent negligence committed by Machau.

---

**2.** Appellant admits that Machau's liability is only by virtue of Minn.Stat. § 170.54, and that

such owner is entitled to recover indemnity from the operator of the car in the absence of any active negligence chargeable to the owner.

*Lunderberg v. Bierman*, 241 Minn. 349, 355, 63 N.W.2d 355, 360 (1954), *cited in Shore v. Minneapolis Auto Auction, Inc.*, 410 N.W.2d 862 (Minn.Ct.App.1987).

■ It follows, as the trial court reasoned, that appellant has defeated his claim against respondent. Because of appellant's release agreement, any indemnity claim paid by Wiltscheck is the responsibility of appellant. As a settled matter of law, respondent has a right of indemnification from Gene Wiltscheck for any damage claim respondent pays to appellant. Thus, any right appellant can establish to recover damages from respondent is offset by appellant's obligation to repay the same damages.[3] *See Pischke v. Kellen*, 384 N.W.2d 201, 205 (Minn.Ct.App.1986) (*Pierringer* release of employee precludes recovery from employer); Annotation, *Release of, or Covenant not to Sue, One Precisely Liable for Tort, but Expressly Reserving Rights Against One Secondarily Liable, as Bar to Recovery Against Latter*, 24 A.L.R.4th 547, 555–560 (1983); Annotation, *Release of (or Covenant not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort or Vice Versa*, 92 A.L.R.2d 533 (1963).

The decision of the trial court does not come without warning. Since first used in Minnesota, it has been recognized that the *Pierringer* release poses the definite hazard that the claimant who uses the release with indemnification "bars himself" from collecting on an award he might otherwise obtain against a nonsettling tortfeasor who has vicarious liability based on negligence of the settling tortfeasor. Simonett at 24–25. *See* 24 A.L.R.4th at 553–55 (the plaintiff who desires to settle with some defendants has to consider the legal implications of the settlement in terms of defendants with vicarious liability). As is suggested by these authorities, respondent contends that appellant cannot make a final settlement with the driver and registered owner of a vehicle without sacrificing any prospective claim against a de facto owner.

Appellant states numerous contentions aimed at defeating the rationale of the trial court. To obtain relief from the judgment, appellant's arguments require that we accept one of three premises. First, appellant asks that we draw an exception to the law of indemnification for the vehicle owner. Second, he contends that the release document should be reformed somehow to avoid his indemnification obligation. Finally, appellant cites cases suggesting that possible defeat of his claim be postponed until such time as a circle of claims and recoveries is concluded, including appellant's recovery of damages from the respondent, respondent's recovery of indemnification from Wiltscheck, and Wiltscheck's recovery of indemnification from appellant. We find no basis for recognizing any of these avenues for escape from the judgment determined by the trial court.

a.

As we have already observed, a party with vicarious liability is entitled to indemnity from the active tortfeasor. We find no basis for recognition of an exception to that rule in cases where a *Pierringer* release has been given to the active tortfeasor. The law does not favor an agreement of the injured claimant and the active tortfeasor which prejudices the settled

---

**3.** The rationale of the trial court is one among several which lead to the same result. Before the prevalent use of *Pierringer* releases, it was recognized that the release of an active tortfeasor destroys the basis for determining the vicarious liability of another party. *See Serr v. Biwabik Concrete Aggregate Co.*, 202 Minn. 165, 177, 278 N.W. 355, 362 (1938); *see also* 24 A.L.R.4th at 355–57. Similarly, analyzing the *Pierringer* release, it might be observed that the language of the release provides for full satisfaction and discharge of liabilities "to the extent of that percentage" of the claim which is found to be chargeable to the active tortfeasor; thus, the release addresses the entire portion of fault which might otherwise be said to be chargeable to one who is vicariously liable for the fault of that tortfeasor. *See Swanigan v. State Farm Ins. Co.*, 99 Wis.2d 179, 205, 299 N.W.2d 234, 246 (1980) (Coffey, J., dissenting).

rights of another nonsettling party. Simonett at 19.

Appellant contends that the right of indemnity of respondent Machau should not be enjoyed by respondent's insurer. He argues that the insurer's pursuit of indemnification against Wiltscheck is tantamount to an insurer's unlawful pursuit of a subrogation claim against its own insured. *See Swanigan*, 99 Wis.2d at 200, 299 N.W.2d at 244. The application of this concept depends upon coverage which names vehicle operators as insured parties under the policy. *See Builders & Manufacturers Mutual Casualty Co. v. Preferred Automobile Insurance Co.*, 118 F.2d 118, 121 (6th Cir. 1941). Appellant asserts that the operator is a named insured on a policy which covers vicarious liability established by Minn.Stat. § 170.54. The trial court disagreed, and so do we. The record indicates that respondent's insurer would be liable solely because respondent had coverage for all owned vehicles, and there is no claim and no evidence that respondent's policy named operators of those vehicles as insured persons.

Appellant pleads that the law of indemnity should be reformed or modified in order to fulfill the purposes of Minn.Stat. § 170.54. *See Swanigan*, 99 Wis.2d at 192–93, 299 N.W.2d at 241 (statutory liability for conduct of a minor is not subject to common law rules applicable to master and servant). This argument is especially without merit in Minnesota because statutory liability under Minn.Stat. § 170.54 is not *sui generis*, but is specifically declared in terms of the liability of a principal for the conduct of an agent. Appellant's plea carries no weight without the legislative modification of Minnesota law.

With equal vigor, appellant pleads that the law of indemnity should be modified to comply with the clear intention of the parties to the *Pierringer* release that appellant's claim against respondent be preserved. As we observed, settling parties may not alter the indemnity rights of respondent through their agreement. Although the intention of the parties is clear, that intention did not empower them to alter the Minnesota law of indemnity.

Finally, appellant contends that the law of indemnity must be modified in order to protect the well-settled resolve of the courts to foster settlements of the parties. *See Frey*, 269 N.W.2d at 922. While we recognize this settled purpose of the law, it does not give us liberty to conclude that the settling parties are thus enabled to prejudice the established rights of other parties. *See* Simonett at 19.

b.

Appellant has asserted before the trial court and on appeal that his *Pierringer* release should be modified to accomplish its intended result. On appeal, appellant argues:

> There may be better words to use whereby the release of Wiltscheck under these circumstances does not also legally release Machau. * * * At the barest minimum, reformation should have been resorted to by the Trial Court to give effect to the intent of the parties to the Pierringer Release and to prevent Machau and [his insurer] from becoming laughing beneficiaries to that contract.

As is evident in the recitation of appellant's argument, he has not suggested how his release instrument might be modified to accomplish the result he desires. Ultimately, the declared intent of the instrument could only be accomplished by destroying someone's right of indemnity, either Machau's or Wiltscheck's.

We have already observed the inability of the parties through any form of agreement to modify Machau's indemnification rights. Modification of Wiltscheck's indemnity rights is tantamount to withdrawing the essential promise of appellant to release Wiltscheck; what is necessary in this regard constitutes rescission or withdrawal of the release agreement, not reform.

Although appellant has addressed the reform topic to the trial court and to this

court, he has neither claimed nor proven that he is entitled to relief in the form of rescission of his *Pierringer* release agreement with Gene Wiltscheck and Oscar Reinhart. In its memorandum attached to the October 1986 order for summary judgment, the trial court observed that appellant's only remedy is

> to commence an equitable action to rescind or reform the release agreement, appeal the ruling of this court and allow the appellate court to determine whether or not its consideration of the case should be stayed pending the equitable action.

None of the proceedings before this court indicate that an equitable action has been commenced or that appellant claims entitlement to equitable relief. This court has not been asked to stay its consideration of the case.

We appreciate that appellant's success, if any, in rescinding the *Pierringer* release, would lead to reversal of the trial court's rationale. On the other hand, our decision to affirm the trial court endorses a final judgment in favor of respondent Machau. Because appellant has given no indication of a desire or a basis for rescission of the release agreement, we find no cause for delaying a final decision in the case.

c.

There is a suggestion in some foreign state decisions that a claimant might be permitted to establish the vicarious liability of a nonsettling party in spite of an earlier release of the active tortfeasor, even though there is little likelihood the claim would prove valuable after the enforcement of indemnity rights. *See Swanigan,* 99 Wis.2d at 202–03, 299 N.W.2d at 245 (where there appears some uncertainty about the nonsettling party's indemnity rights, the claimant is permitted to proceed). We are dealing here with circumstances where there is no appearance of uncertainty regarding indemnity rights of either Gene Wiltscheck or respondent. It is not appropriate in this case to permit appellant to proceed with an inescapably futile claim.

### DECISION

Appellant's execution of a *Pierringer* release has defeated his claim against respondent.

Affirmed.