David KELLEN, Appellant,

v.

John MATHIAS, Respondent.

No. C7–93–2411.

Court of Appeals of Minnesota.

July 12, 1994.

## OPINION

AMUNDSON, Judge.

Appellant argues the district court erred in determining that a nonsettling defendant was released from liability where the settling defendants were vicariously liable for the acts of the nonsettling defendant.

We reverse and remand.

## FACTS

Appellant David Kellen owns farmland in Traverse County and grows sugar beets. David and Daniel Miller own adjacent farmland and grow soybeans. Respondent John Mathias owns and operates an aerial chemical application service. In June 1991, the Millers contracted with Mathias to spray a chemical herbicide on their soybean crop.

Kellen claims that during the chemical application, the herbicide strayed onto his land and came to rest on portions of his sugar beet crop. As a result, Kellen claims he suffered a diminished sugar beet yield. Consequently, Kellen commenced an action against the Millers and Mathias for his alleged loss.

Appellant asserted liability under four different theories: (1) violation of Minn.Stat. § 18B.07 (1990) [1] (2) chemical trespass; (3) strict liability; and (4) negligence. The Millers and Mathias answered the complaint and filed cross-claims against each other seeking indemnity and/or contribution from the other if any damages were awarded.

Kellen settled his claim in full against the Millers for $25,000 and they entered into a *Pierringer* release.[2] Mathias then moved for summary judgment, arguing that the effect of the *Pierringer* release was to release him from liability. Mathias argued that because the Millers were vicariously liable for his actions, the settlement by the Millers settled the entire dispute. In other words, respondent claimed the release of a vicariously lia-

Roger C. Justin, Rinke–Noonan, St. Cloud, for appellant.

Kent D. Mattson, H. Morrison Kershner, Pemberton, Sorlie, Sefkow, Rufer & Kershner, Fergus Falls, for respondent.

Considered and decided by HUSPENI, P.J., and KALITOWSKI and AMUNDSON, JJ.

1. Section 18B.07 regulates the application, use, storage, handling, distribution and disposal of pesticides.

2. The *Pierringer* release was named after *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

ble party also releases the primary tortfeasor.

The district court essentially agreed with Mathias and granted his summary judgment motion. Judgment was entered and this appeal followed.

## ISSUE

Did the district court err in determining that the *Pierringer* release between Kellen and the Millers, who were vicariously liable for the acts of the nonsettling defendant Mathias, also released Mathias from liability?

## ANALYSIS

On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no genuine issues of material fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

This court is essentially being asked to interpret the effect of a contract between the parties. The construction and effect of a contract present a question of law, unless an ambiguity exists. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990). Therefore, since the district court determined a purely legal question, we need not give deference to its decision. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

The settlement agreement and release provided in part:

The Kellens specifically agree to hold the Millers harmless, and specifically agree to indemnify them for any claims, demands or causes of action by John Mathias, for contribution or indemnity * * * By this Agreement, the Millers are discharged from their liability, if any, for contribution or indemnity with respect to the claim for damages from the Kellens, and the claims of the Kellens are satisfied to the extent of that percentage of their total claim for

damages against the Millers arising out of the incident of June 17, 1991, which shall hereafter, by further trial or other disposition of this or any other cause of action, be determined to be the percentage of causal fault or causal responsibility, if any, whether for negligence or any other liability, for which the Millers are found to be liable. This payment by the Millers is not intended as full compensation for the alleged damages claimed by the Kellens arising from the incident of June 17, 1991.

The agreement stated that the payment by the Millers "is not intended as full compensation" for the damages claimed by Kellen. The agreement further provided that it "is specifically understood that this is not an agreement to dismiss the suit now pending against John Mathias" and that the agreement "is only intended to release all claims against the Millers." The parties' intent, however, is not necessarily controlling. *See Hoffmann v. Wiltscheck,* 411 N.W.2d 923, 927 (Minn.App.1987) (in determining the effect of a *Pierringer* release, the intention of the settling parties "did not empower them to alter the Minnesota law of indemnity"), *Pet. for rev. denied* (Minn. Nov. 13, 1987). Thus, we need to look to the effect of the release rather than the parties' intent.

In its simplest form, a *Pierringer* release

(1) releases the settling defendant from the lawsuit and discharges a part of the cause of action equal to the part attributable to the settling joint tortfeasor's causal negligence, (2) reserves "the balance of the whole cause of action" against the nonsettling joint tortfeasors, and (3) contains an agreement whereby the plaintiff indemnifies the settling defendant from any claims of contribution made by the nonsettling parties and agrees to satisfy any judgment he obtains from the non-settling tortfeasors to the extent the settling tortfeasor has been released.

John E. Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota,* 3 Wm. Mitchell L.Rev. 1, 3 (1977) (footnote omitted).

The Minnesota Supreme Court has approved of the *Pierringer* release as a means to permit trial of unsettled claims after dismissal of defendants who have settled. *See Frey v. Snelgrove*, 269 N.W.2d 918, 921–23 (Minn.1978).

To illustrate the use of a *Pierringer* release, we use the following examples. Assume the plaintiff is injured by joint tortfeasors A and B. The case proceeds to trial and the jury apportions A's and B's negligence at 50% each and finds damages of $100,000. The plaintiff can collect $100,000 from either A or B. If the plaintiff collected $100,000 from B, B would have a right of contribution against A for $50,000. Therefore, A and B will ultimately be responsible for $50,000 each.

Using the same facts, now assume that the plaintiff settled with A prior to trial for $10,000 and they entered into a *Pierringer* release. Theoretically, the plaintiff could collect $90,000 from B. B would then have an action for contribution against A for $40,000. Via the *Pierringer* release, however, the plaintiff has agreed to indemnify A for any contribution, thus A can seek the $40,000 from the plaintiff. The ultimate effect is that the plaintiff will receive only $60,000 and will therefore be undercompensated. *See, e.g., Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794, 796–97 (Minn.1987) (trial court properly reduced the jury verdict by the proportion of fault attributable to the settling defendant; plaintiff received $20,000 for *Pierringer* release from defendant to whom jury allocated 40% of the fault for $800,000 in damages).

Again applying the same fact situation, assume that the plaintiff settles with A for $90,000. B would still be liable for $50,000. There would be no contribution or indemnity actions available to any party. Thus, the plaintiff would receive a total of $140,000, or a windfall of $40,000. *See, e.g., Rambaum v. Swisher*, 435 N.W.2d 19, 22–23 (Minn.1989) (plaintiff overcompensated where amount paid to settle claim was in excess of jury verdict attributable to the settling defendant).

As in accepting any settlement, the plaintiff accepts the risk of being overcompensat-ed as well as being undercompensated. *Id.* at 23. If subsequent events sometimes result in a so-called "windfall" for the plaintiff, that result is acceptable within the context of the law's strong policy to encourage the settlement of disputes. *Id.* The equitable principle of contribution that each defendant pay its fair share is not offended, but, indeed, reinforced by the *Pierringer* arrangement. *Id.* Whether or not the plaintiff is overcompensated or undercompensated, the nonsettling tortfeasor is assured that it will not pay more than its fair share of the yet-to-be-determined plaintiff's award. *Id.* at 22.

In the present case, we recognize there are fact issues concerning whether Mathias was an agent. *See Dalager v. Montgomery Ward & Co.*, 350 N.W.2d 391, 394 (Minn.App.1984) (whether an agency relationship exists is usually a fact question for the jury unless the evidence is conclusive one way or the other). Nevertheless, in reviewing the district court's decision, we accept the court's finding that Mathias was acting as the agent of the Millers. This determination is not critical since we also accept the parties' assumption that the Millers are vicariously liable for Mathias' acts.

■ Assuming, as Kellen avers in his complaint, that aerial spraying is an "ultra-hazardous" activity, it follows that one who employs another to engage in an ultrahazardous activity is vicariously liable for any loss. *See* Restatement (Second) of Torts § 427A (1965); *see also Lawler v. Skelton*, 241 Miss. 274, 130 So.2d 565, 569 (1961) (owner of farmland may not delegate work of spraying of crops to an independent contractor and avoid liability); *Loe v. Lenhardt*, 227 Or. 242, 362 P.2d 312, 318 (1961) (landowner who hires contractor to spray chemicals from an airplane is liable for the resulting harm).

The indemnification provision in a *Pierringer* release is applicable where a plaintiff sues both an actively negligent defendant and a defendant who is only vicariously liable. The issue presented in this case is one of first impression in Minnesota. Previously, however, we have addressed the inverse of the present fact situation, i.e. where the plaintiff and the active tortfeasor/agent en-

tered into a *Pierringer* release. *See Hoff-mann*, 411 N.W.2d at 925–28.

In *Hoffmann*, the plaintiff, Hoffmann, was injured when he was struck by a car driven by Wiltscheck and owned by Machau. Machau's prospective liability was solely as the principal for the acts of an agent. *Id.* at 925. Hoffmann settled his claim with Wiltscheck, the active tortfeasor, through a *Pierringer* release. The parties intended to preserve Hoffmann's claim against Machau. This court, however, determined that the release destroyed Hoffmann's cause of action against Machau. *Id.* at 926–27.

■ This court noted that "plaintiff's indemnification of the settling tortfeasor" is the indispensable characteristic of a *Pierringer* release because "it protects the non-settling defendant from having to pay more that its share of liability." *Id.* at 925. Under Minnesota law, a principal who pays damages for the acts of an agent is entitled to indemnification from the agent. *Id.*

It followed that Hoffmann defeated his claim against Machau because under the release agreement, any indemnity claim paid by Wiltscheck was the responsibility of Hoffmann. *Id.* at 926. As a matter of law, Machau had a right of indemnification from Wiltscheck for any damage claim he paid to Hoffmann. *Id.* Thus, any right Hoffmann could establish to recover damages from Machau was offset by Hoffmann's obligation to repay the same damages. *Id.*

Although the plaintiff may sue and collect the full amount from either defendant, the vicariously liable defendant has full rights of indemnification against the actively negligent party. *See Polaris Indus. v. Plastics, Inc.*, 299 N.W.2d 414, 420 (Minn.1980). Because the settlement cannot prejudice the nonsettling party, a settlement cannot alter the indemnification rights of a nonsettling defendant who is only vicariously liable. Thus, as in *Hoffmann*, a release of the actively negligent party also releases the vicariously liable party.

■ The issue we are now asked to decide is whether, in the absence of an independent indemnity obligation, the release of a party who is only vicariously liable for the acts of the nonsettling defendant/active tortfeasor/principal, also releases the non-settling defendant/agent from liability. Applying the indemnification element of a *Pierringer* release, we conclude that the release of a vicariously liable defendant does not release the nonsettling defendant.

The following examples illustrate what happens when there is an agent/principal relationship, i.e. an active tortfeasor and a party who is liable only vicariously for the acts of its agent. Assume the plaintiff sues A (agent/active tortfeasor) and P (principal/vicariously liable party) and recovers $100,000. The plaintiff can collect the full $100,000 from either party. If the plaintiff collects the $100,000 from P, P has a right of indemnity against A for $100,000. *See Hoffman*, 411 N.W.2d at 925 (a principal who pays damages for the acts of an agent is entitled to indemnification from the agent).

Now assume the same facts except that the plaintiff settles with A for $10,000 and they enter into a *Pierringer* release. Theoretically, the plaintiff could maintain an action against P for full recovery or $90,000. P would then be entitled to full indemnity from A. Via the *Pierringer* release, however, the plaintiff agreed to indemnify A for any claims made by P. Thus, under the indemnification provisions of the *Pierringer* release, the plaintiff gets nothing more. Thus, the release of A effectively released P, even though that may not have been the intent of the parties. *See, e.g., Hoffmann*, 411 N.W.2d at 927.

Applying the same fact situation again, assume the plaintiff settles with P for $10,000. A is still responsible for any damages it caused the plaintiff. Because A has no right of contribution or indemnity from P, A's rights have not been affected by the settlement. A has not been prejudiced in any way by the settlement. Thus, there is no reason to find that the release of P also released A.

This last example is analogous to the facts of the present case. No policy reason exists to release an agent where the principal is released, absent an intent to release both parties. Certain situations may arise where a plaintiff might settle with a principal, but

not intend to release the agent. For example, the settlement may represent the principal's solvency rather than the fair value of the claim; or the settlement may represent a compromise due to uncertainty as to whether the principle of respondeat superior legally holds the defendant vicariously liable for the acts of the other defendant. Thus, a plaintiff should not be deprived of a cause of action against an active tortfeasor when the plaintiff has not intentionally surrendered the claim.

We note that this view is in accord with the approach recommended in the Restatement (Second) of Judgments wherein an injured party may pursue the agent after settling with a principal. Restatement (Second) of Judgments § 51, cmt. f (1982); *see also Vanderpool v. Grange Ins. Ass'n,* 110 Wash.2d 483, 756 P.2d 111, 111, 114 (1988) ("release of an employer from vicarious liability does not * * * release the primarily liable employee").

Under certain situations, a principal may have an obligation to indemnify its agent. Under Minn.Stat. § 466.07, subd. 1 (1992), a municipality is required to "defend and indemnify any of its officers and employees" for damages arising when the officer or employee was acting in the performance of the duties of the position and was not guilty of malfeasance in office, willful neglect of duty or bad faith. A plaintiff may enter into a *Pierringer* release with the municipality to the effect that the plaintiff agrees to indemnify the municipality for any claims of contribution or indemnity. To the extent a judgment is rendered against the employee, the municipality has an obligation to indemnify the employee, and pursuant to the *Pierringer* release, the plaintiff would have to indemnify the municipality. Thus, the plaintiff would recover nothing from the employee, effectively releasing the employee from liability. Thus, the release of a principal who has an indemnity obligation will release the agent.

In the present case, however, the Millers have no obligation to indemnify Mathias. Accordingly, we conclude, that in the absence of an independent indemnity obligation, a *Pierringer* release between a plaintiff and a defendant who is vicariously liable for the acts of a nonsettling defendant does not release the nonsettling defendant from liability, unless the parties to the release intend to release the nonsettling party.

Lastly, we note that the district court erred in failing to consider Kellen's alternative theories of relief. A *Pierringer* release would only release a principal if its liability was solely vicarious. *See Reedon of Faribault v. Fidelity & Guar. Ins. Underwriters, Inc.* 418 N.W.2d 488, 491 (Minn.1988) (*Pierringer* agreement released principal from vicarious liability). A principal may have, as alleged against the Millers in this case, independent liability for its own negligence. Thus, the allocation of negligence should be put to the jury.

### DECISION

The trial court erred in determining that the *Pierringer* release between Kellen and the Millers also released the nonsettling defendant Mathias from liability. Accordingly, we reverse the entry of summary judgment and remand for trial.

**Reversed and remanded.**