Ruby E. THOMPSON, acting on her own behalf and on behalf of her son, Shad H. Thompson, a minor, Plaintiff–Appellee,

v.

Sarah BRULE, Defendant–Appellant,

Leroy R. Brule, Defendant–Appellant.

No. 93–2768.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1994.

Decided Oct. 12, 1994.

Rehearing Denied Nov. 16, 1994.

William M. Hart, Minneapolis, MN, argued (Mark Bloomquist and Joseph Schmitt on the brief), for appellants.

Don C. Aldrich, Minneapolis, MN, argued (Patrick Gillespie, on the brief), for appellee.

Before MAGILL, Circuit Judge, FLOYD R. GIBSON and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Leo Brule and his daughter, Sarah Brule, appeal from the district court's[1] entry of judgment in favor of Ruby E. Thompson, acting on her behalf and on the behalf of her son, Shad H. Thompson, for injuries that Shad Thompson received in an automobile accident, as well as the court's rulings on a number of orders. On appeal, the Brules argue that the district court erred in ruling that it had subject matter jurisdiction. They further argue that a partial release the Thompsons executed in favor of Michael Thygeson extinguished their liability to the Thompsons, and that Shad Thompson's negligence, as a matter of law, was the direct cause of his injuries. We affirm, but remand to the district court to reduce the net judgment by $130,000, the amount of the settlement payment made by Thygeson to Thompson.

Leo R. Brule owned a Chevrolet Chevette automobile which he allowed his daughter, Sarah, to drive. There was a party for a number of young people which involved considerable beer drinking. After a ride in Michael Thygeson's car, Sarah drove her car with Margaret Anderson, Thygeson, and Shad Thompson as passengers. The group stopped at Margaret's house and Shad and Thygeson stayed in the car while Margaret and Sarah went in to invite Margaret's brother to join them. Thygeson got behind the wheel of the car and started honking the horn and revving the motor. Sarah, Margaret and Richard Anderson rushed outside. Thygeson put the car in gear and started to back out of the driveway. The car stalled, and at that point, Shad got out of the car and into the front seat. Thygeson drove away and lost control of the car, causing serious injuries to Shad. As the result of the accident, Shad is in a persistent vegetative state and incompetent.

This action was filed against Thygeson, Sarah, and Leo Brule. While the case was pending, Ruby Thompson, individually and as

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

a court-appointed guardian of her son, settled their claim against Thygeson for $130,-000, reserving the right to pursue their claims against non-settling parties.

The case was tried to a jury against the remaining defendants. The jury found that Thygeson had permission to use the car at the time of the accident, was negligent, and that the negligence was the direct cause of the accident. The jury also found that Sarah Brule was negligent, and that her negligence was a direct cause of the accident. The jury found that Shad Thompson was negligent, but found that his negligence was not a direct cause of the accident. The jury awarded Thompson $1,100,000 in damages. The jury allocated 90 percent of damages to Michael Thygeson, 10 percent to Sarah Brule, and none to Shad Thompson. The district court found Leo Brule, as owner of the car, liable for the negligence of the driver under Minnesota Statutes section 170.54,[2] and entered judgment against him in the amount of $873,000 and against Sarah Brule in the amount of $97,000.[3]

Before trial, the district court rejected Leo and Sarah Brules' argument that the release executed by Ruby Thompson not only extinguished Thygeson's liability, but also the Brules'. *Thompson v. Thygeson,* No. 3–90–294, slip op. at 4–5 (D.Minn. Aug. 3, 1992). The district court ruled that the release was neither a general release nor a *Pierringer* release. *Id.* The Brules appeal.

### I.

■ The Brules argue that the district court lacked subject matter jurisdiction. They say that Ruby Thompson testified that she was a Minnesota, not a North Dakota, resident when she filed this action on May 22, 1990, and, therefore, there was no diversity jurisdiction.

On cross-examination, Ruby Thompson testified that she moved to Grand Forks and had done so about a week before her wedding, which was June 2, 1990. The Brules' counsel asked "Would that have been May, approximately, 25, or something like that?" She answered: "Something like that". When the motion directed to jurisdiction was filed, Thompson filed an affidavit stating that she had been mistaken in her testimony about moving on May 25, that she moved on May 19, 1990, and that it was her future husband who moved into the apartment on May 25. The affidavit of Douglas Grove, her then future husband, confirmed these dates, as did an affidavit of Thompson's son-in-law, who remembered helping her move on May 19, 1990, two weeks before her wedding.

The district court did not err in denying the motion to dismiss for lack of jurisdiction. The Brules' counsel placed the May 25 date in Thompson's mouth on cross-examination. Thompson simply answered by repeating the leading question, "Something like that." This testimony is not sufficiently specific to prevent its clarification by the affidavits. There was sufficient evidence for the court to conclude that Thompson moved to North Dakota on May 19, 1990 and was not a Minnesota resident on May 22 when she filed this diversity action.

### II.

■ Leo Brule's most serious argument is that Thompson's release in favor of Thygeson barred her derivative claim against him under Minnesota Statutes section 170.54. Brule argues that the legal effect of the release was to discharge that portion of plaintiffs' cause of action equal to the percentage of causal fault assigned to the active tortfeasor—here 90 percent—and to defeat any basis for recovery of future damages from Brule as a vicarious tortfeasor. We review the district court's determination of state law de novo without giving deference to

---

**2.** Minnesota Statutes section 170.54 provides: Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator therefore shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof. Minn.Stat. § 170.54 (1992).

**3.** The total of these two awards equals the $1,100,000 judgment. However, after trial the parties stipulated, and the court ordered, that the verdict should be reduced by $493,000, representing collateral source deductions pursuant to Minnesota Statutes § 65B.51 and 548.36 (1992).

the district court's judgment. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991).

▪ Brule makes two arguments in support of his contention that the Thompsons' release of Thygeson extinguished any claim of vicarious liability against him. First, Brule argues that Thompson's release of Thygeson is properly construed as a *Pierringer* release and, as such, precludes any claims of vicarious liability against him. The so-called *Pierringer* release [4] allows a plaintiff to "release a settling defendant and to discharge a part of the plaintiff's cause of action while reserving the balance of the cause of action against the nonsettling defendants." *Reedon of Faribault, Inc. v. Fidelity and Guar. Ins. Underwriters, Inc.,* 418 N.W.2d 488, 490 (Minn.1988). Moreover, a *Pierringer* agreement limits a plaintiff's recovery to " 'the unsatisfied percentage of the damages—the percentage attributable to the nonsettling tortfeasor.' " *Frederickson v. Alton M. Johnson Co.,* 402 N.W.2d 794, 797 (Minn.1987) (quoting *Peiffer v. Allstate Ins. Co.,* 51 Wis.2d 329, 187 N.W.2d 182, 185 (1971)).

▪ It is well established that the release of an agent pursuant to a *Pierringer* release extinguishes any claims of vicarious liability against the principal for the acts of his agent. *Reedon,* 418 N.W.2d at 491 (holding that a *Pierringer* release, releasing an insurer's agent released the insurer from vicarious liability); *Hoffmann v. Wiltscheck,* 411 N.W.2d 923, 926 (Minn.Ct.App.1987) (holding that a *Pierringer* release in favor of an agent/driver precluded a vicarious liability claim against the principal/owner). However, Brule is not helped by these cases, because the Thompsons' release of Thygeson was not a *Pierringer* release and it differs significantly from the releases at issue in *Reedon* and *Hoffmann.*

▪ The district court did not err in determining that the release was not a *Pierringer* release because it does not contain an indemnity agreement. The release recited that, in consideration of $130,000, the Thompsons discharged Michael T. Thygeson from all actions "except any indemnity or contribution suit by or on behalf of Sarah Brule, Leo Brule, or their insurers." The release further states that:

> the undersigned is limited to the percentage portion of liability for which the settling party may be found responsible in the event of a trial or other disposition of this or any other action. This Release is given as a full satisfaction and discharge of the liability of the settling party only. The release of non-settling parties who also may bear a liability to the undersigned for the alleged incident is not contemplated hereunder. The undersigned specifically reserves any and all causes of action against non-settling parties subject only to a reduction of any judgment or verdict for damages equal to the contributive or pro rata share which may be found directly attributable to the settling party which may be more, the same or less than the consideration hereunder paid.

The provision of the release which explicitly expresses Thompson's intent not to indemnify Thygeson, when read in conjunction with the rest of the release, shows that the release is not properly construed as a *Pierringer* release and preserves a vicarious liability claim against Brule.

▪ In *Hoffmann,* the court stated that "[t]he plaintiff's indemnification of the settling tortfeasor is the indispensable characteristic of the *Pierringer* release because it protects the nonsettling defendant from having to pay more than its share of liability." *Hoffmann,* 411 N.W.2d at 925. Absent an indemnity agreement, a release is not properly construed as a *Pierringer* release because it leaves the settling party open to indemnity suits by non-settling parties and, therefore, is not a complete discharge of the settling party. This is precisely what the terms of the release in this case provide.

▪ The *Pierringer* release contemplates a complete discharge of the settling party. *Reedon,* 418 N.W.2d at 490. In *Reedon,* the

---

4. The Pierringer release was first approved by the Wisconsin Supreme Court in *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963). The Minnesota Supreme Court has approved the use of the *Pierringer* release. *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978).

Minnesota Supreme Court concluded that the release was a *Pierringer* release, and that the inclusion of an indemnity agreement in the release was "evidence of the intent to release all claims against the [settling party]." *Id.* In the present case, there is no indemnity agreement, and this evidences the intent of the parties not to release all claims against the settling party. The release discharges Thygeson only with respect to Thompson's claims, but leaves Thygeson liable for the indemnity claims of the Brules, without any right of indemnity from the Thompsons. Thus, liability remains in Thygeson and the release is not properly construed as a *Pierringer* release.

▪ Furthermore, when a release does not contain an indemnity agreement, there is no basis for foreclosing claims of vicarious liability. The rule that a *Pierringer* release of an agent extinguishes the vicarious liability of the principal is premised on the logic that where there is such a release, it would be useless to allow a plaintiff to maintain a suit against a principal because the plaintiff would have an offsetting obligation to the agent against whom a principal would seek indemnity. In *Hoffmann*, the court reasoned that plaintiff's *Pierringer* release in favor of the driver/agent precluded recovery against the owner/principal because any right the plaintiff could establish to damages from the owner/principal would be offset by the plaintiff's obligation to pay the same damages to the driver. *Hoffmann*, 411 N.W.2d at 926. In the absence of an indemnity agreement, there are no offsetting obligations and, thus, no grounds for precluding claims of vicarious liability.

▪ Second, Brule argues that even if the release is not a *Pierringer* release, it nonetheless released his vicarious liability. Brule relies upon the common law rule that "a valid release of or exoneration of the servant releases the master." *Serr v. Biwabik Concrete Aggregate Co.*, 202 Minn. 165, 278 N.W. 355, 362 (Minn.1938). However, this argument ignores the fact that, in the present case, the release is not a complete "release of or exoneration of the servant" because Thygeson remains liable to the Brules for full

indemnification. Thus, *Serr* is not controlling in the present case.

Once Brule's arguments that the release was a *Pierringer* release or a complete "exoneration" of Thygeson are dispensed with, the question before us is determined by the language of the release, which plainly preserved a cause of action against Brule. This was the basis of the district court's order.

## III.

▪ Next, the Brules argue that Shad Thompson's negligence was the direct cause of his injuries as a matter of law. The jury returned a special verdict finding Shad Thompson negligent, but not causally negligent. In determining whether or not the jury's finding of no causation should be set aside, "the evidence must be viewed in the light most favorable to the verdict." *Gray v. Davis*, 414 N.W.2d 238, 239 (Minn.Ct.App. 1987). "Generally the determination of proximate cause is a question for the jury and courts will not interfere with the jury's findings." *Id.* Here, we see no reason to intrude upon the province of the jury.

The Brules' argument that, as a matter of law, Shad Thompson's failure to exit the car was negligence that caused his injury is unconvincing. The Brules cite several cases in support of this proposition. *May v. Lemmon*, 287 Minn. 158, 177 N.W.2d 298 (1970); *Risacher v. Lien*, 279 Minn. 58, 155 N.W.2d 382 (1967); *Reese v. Henke*, 277 Minn. 151, 152 N.W.2d 63, 67 (1967). Each of the cases the Brules cite were decided on unique factual circumstances. Under the particular circumstances of this case, the jury could reasonably conclude that Shad Thompson's negligence did not play a substantial role in bringing about the harm.

## IV.

▪ Finally, the Brules assert that even if the verdict stands, they are entitled to a pro tanto offset for the $130,000 payment by Thygeson's insurer to Thompson. The Brules' failure to raise the issue before the trial court would ordinarily prevent us from considering the argument on appeal. *Morrow v. Greyhound Lines Inc.*, 541 F.2d

713 (8th Cir.1976). However, we have "the discretion to consider an issue for the first time on appeal 'where the proper resolution is beyond any doubt.'" *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir.1991) (citations omitted).

Thompson's brief, with respect to the offset, states "Brule is correct." Thus, the proper resolution is beyond doubt. Indeed, the district court's original Order for Judgment ordered a pro tanto reduction of the $1.1 million verdict by $130,000, but the Amended Order did not. This is one of the rare occasions where it is appropriate for this court to consider an issue not raised in the trial court and grant relief.

We have carefully considered the arguments made by the Brules and conclude that the district court did not err in entering judgment in favor of Thompson. We affirm, but remand to the district court to reduce the net judgment by $130,000, the amount of the settlement payment made by Thygeson to Thompson.

We Affirm.