Kevin MILLER, Plaintiff–Appellant,

v.

FEDERAL EMERGENCY MANAGE-MENT AGENCY; National Flood Insur-ance Program; John Does, A–M, Defen-dants–Appellees.

No. 94–1780.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1995.

Decided June 20, 1995.

Christopher P. Simms, St. Louis, MO, ar-gued, for appellant.

Eric Tyrone Tolen, St. Louis, MO, argued. In addition the names of (Edward L. Dowd, Jr. and Brenda Grise Goranflo, on the brief), for appellee.

Before BOWMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Kevin Miller appeals from the district court's [1] judgment, entered following a three-day bench trial, denying him recovery on his claim made under a flood insurance policy issued by the National Flood Insurance Pro-gram. Miller also appeals the district court's judgment in favor of the Federal Emergency Management Agency [2] on FEMA's counter-claim for Miller's violation of the False Claims Act, 31 U.S.C. § 3729(a) (1988), and imposing a $49,065.47 judgment. We affirm the district court's judgment against Miller, but remand for reconsideration of the judg-ment amount.

We recite the relevant district court find-ings of fact. On May 5, 1985, Miller and Margaret Antoine purchased a house located at 105 Alta Villa Road, and obtained an as-signment of a lease. At that time, the lower level of the house was flood damaged. Mil-ler, Antoine, and their daughter moved into the house in the fall of 1985. Miller testified that he cleaned up the house and did some general cosmetic repairs.

On November 23, 1985, Miller and Antoine paid $210 for a one-year Standard Flood Insurance Policy from the Insurance Pro-gram. The policy provided for coverage up

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Mis-souri.

2. The Director of FEMA is authorized to imple-ment the National Flood Insurance Program and promulgates the "terms and conditions of insura-bility" under the Insurance Program. 42 U.S.C. §§ 4011(a), 4013(a) (1988).

to a limit of $30,000 on the building and $10,000 on the contents.

On May 21, 1986, the house was flooded. Miller and Antoine filed a proof of loss claiming $7,283.87 in building damage and $4,174.15 in content damage. The Insurance Program paid this claim in full. Miller testified that the building and content damage which resulted from this flood was limited to the lower level of the house.

On October 2, 1986, the structure was again flooded. Miller and Antoine filed another proof of loss claiming that the flood caused $25,774.45 in building and content damage. Miller claimed content damage only from the lower level of the house and building damage was claimed for both the lower and upper levels of the house.

William A. Hoover, an independent insurance adjuster with Reliable Adjusters and Appraisers, assisted Miller and Antoine in the preparation of their proof of loss as well as the completion of a work sheet and building report required to be filed with the Insurance Program. Hoover wrote in his report that the water level was eight feet high, and included costs for the repair of both the first and second levels of the house, and replacement of the second level's subflooring.

On December 19, 1986, R.E. Gray, a Federal Insurance Claims Office manager for the Insurance Program, wrote to Miller and Antoine and acknowledged the Insurance Program's receipt of their proof of loss. The insureds were informed that although their proof of loss had been timely filed, the Insurance Program "reject[ed] any and all the statements thereon with regards to the amount of value and loss."

On January 16, 1987, Kirby Gallagher, a fraud adjuster employed by the Insurance Program, reinspected Miller's property. Gallagher concluded that the house was originally built as an elevated building and that the first floor was later enclosed. Under FEMA regulations "[e]nclosures, contents, machinery, building components, equipment and fixtures located at an elevation lower than the lowest elevated floor of an elevated building" are not insurable. 44 C.F.R. § 61.5(f)(10) (1985). Gallagher also measured the interior and exterior water lines and determined that the water level reached seven and one-half feet and, therefore, concluded that the October 2, 1986 flood did not damage the second level. Gallagher also found rotted subflooring, rusted steel support beams, and moldy exterior block walls from previous floods, indicating earlier unrestored damage. Gallagher recommended that the Insurance Program should deny Miller's claim from the October 1986 flood. Gallagher reinspected the property in January and April of 1987, and confirmed the findings of his first inspection.

Miller filed a complaint against the director of FEMA, alleging that FEMA wrongfully denied his flood insurance claim from the October 1986 flood. In response to Miller's suit, FEMA filed a counterclaim under the False Claims Act, 31 U.S.C. § 3729(a), and common law fraud theories. FEMA contended that not only was Miller's claim arising from the October 1986 flood correctly denied, but that the October 1986 and May 1986 claims that Miller presented to FEMA were false claims.

The district court dismissed FEMA's fraud counts based on the Missouri statute of limitations. However, the district court ruled that the federal statute of limitations had not run on the false claims Miller made following the May 1986 flood. These allegations were set out in Count I of FEMA's counterclaim. Count I did not contain any allegations with respect to false claims Miller made following the October 1986 flood.

Following a three-day bench trial, the district court held that FEMA had not wrongfully denied Miller's claim from the October 1986 flood and that Miller's May 1986 flood claim violated the False Claims Act. The court found that the house was elevated and that losses incurred at an elevation lower than the lowest elevated floor of an elevated building were not covered under the policy. The court also found that photographs and testimony admitted at trial showed that Miller claimed prior unrestored damage following both floods. The district court entered a

$49,065.47 judgment against Miller.[3] Miller contests the district court's judgment on six grounds.

In a civil bench trial, the trial judge's findings of fact "shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a). " 'Mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewable de novo.' " *Ellis v. Great–West Life Assur. Co.,* 43 F.3d 382, 386 (8th Cir.1994) (quoting *Sargent v. Commissioner of Internal Revenue,* 929 F.2d 1252, 1254 (8th Cir. 1991)).

### I.

Miller argues that the district court erred because it retroactively applied the False Claims Act's 1986 amendments. Congress amended the False Claims Act in 1986 and the amendments became effective on October 27 of that year. False Claims Amendment Act of 1986, Pub.L. 99–562, 100 Stat. 3153, §§ 3729–33 (1986).

■ Miller did not raise this issue before the district court and ordinarily we would not consider the argument on appeal. *Thompson v. Brule,* 37 F.3d 1297, 1302 (8th Cir. 1994). However, when the proper resolution is beyond any doubt, we may consider an issue raised for the first time on appeal. *Id.*

■ In ruling on Miller's motion to dismiss FEMA's counterclaims as time-barred, the district court concluded that the statute of limitations began to run on July 18, 1986, the date the Insurance Program paid Miller on his May 1986 flood claim. Thus, although the government's counterclaim ripened before the effective date of the 1986 amendments, the district court subjected Miller to the amended statute.

Generally, "[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (quoting *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988)); *but see Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (departing from the generally accepted rule). The 1986 amendments to the False Claims Act do not require that the amendments be applied retroactively and, therefore, should not be applied retroactively. *See United States v. TDC Management Corp. Inc.,* 24 F.3d 292, 298 (D.C.Cir.1994) (1986 False Claims Act penalty amendments should not be applied retroactively); *United States v. Murphy,* 937 F.2d 1032, 1036 (6th Cir.1991) (same).

■ Miller asserts that the district court's retroactive application of the 1986 amendments adversely affected him in two ways. First, the 1986 amendments increased the penalty provision of the Act significantly. Before the 1986 amendments, the Act provided for a penalty in an amount double the damages incurred by the government and a civil penalty of $2,000. 31 U.S.C. § 3729 (1982). The 1986 amendments increased the available penalty to triple the amount of the government's actual damages and a civil penalty of not less than $5,000 or greater than $10,000. 31 U.S.C. § 3729(a)(7) (1988). Thus, it is necessary that we remand to district court so that it may impose a judgment in accord with the False Claims Act which was in effect on July 18, 1986.[4]

---

3. The district court calculated damages by applying 31 U.S.C. § 3729(a)(7) which authorizes treble damages and a civil penalty not less than $5,000 or greater than $10,000. In calculating damages the district court: (1) trebled the government's damages ($11,458.02 × 3 = $34,-374.06); (2) imposed a $5,000 civil penalty; and (3) trebled prejudgment interest ($3,230.47 × 3 = $9,691.41).

4. Before the 1986 amendments, the False Claims Act provided:

A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains, because of the act of that person, and costs of the civil action, if the person—

(1) knowingly presents, or causes to be presented, to an officer or employee of the Government ... a false or fraudulent claim for payment or approval;

31 U.S.C. § 3729(1) (1982).

Second, Miller contends that before the amendments, the government had to prove a specific intent to defraud. The 1986 amendments state that "no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b) (1988).

Although the district court's retroactive application of 1986 amendments resulted in an increased penalty, it did not lessen the applicable intent standard. Even before the enactment of the 1986 amendments, the Eighth Circuit did not require proof of specific intent to defraud in order to find liability under the False Claims Act. In *United States v. Cooperative Grain and Supply Co.,* 476 F.2d 47, 58 (8th Cir.1973), we concluded that the terms of the False Claims Act did not require proof of specific intent to defraud. Thus, the 1986 amendments did not affect the Eighth Circuit intent standard. Despite the district court's erroneous retroactive application of the 1986 amendments, it applied the correct intent standard.

## II.

Miller raises five other arguments. Miller argues that the district court: (1) erroneously applied a strict liability standard in violation of the False Claims Act; (2) erred in determining that his house was an elevated building; (3) erred in determining that the evidence was sufficient to show that he violated the False Claims Act; (4) erred in imposing prejudgment interest on the judgment; and (5) failed to make sufficient findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). We have carefully reviewed the record and the relevant law, and find these arguments to be without merit.

For the foregoing reasons, we affirm the district court's judgment in all respects, except that we remand the case to the district court for reconsideration of damages.