William A. BOGATZKI, as trustee for the heirs of Darlene J. Bogatzki, deceased; William A. Bogatzki, individually, et al., Appellants,

v.

Norman H. HOFFMAN, Respondent,

John Hoffman, et al., Defendants.

Norman H. HOFFMAN, Third–Party Plaintiff, Respondent,

v.

TECHNICAL ORDNANCE, INC., Third–Party Defendant, Respondent.

No. C2–88–955.

Court of Appeals of Minnesota.

Oct. 25, 1988.

Review Denied Dec. 21, 1988.

J. Christopher Cuneo, James M. Lockhart, Smith, Juster, Feikema, Malmon & Haskvitz, Chartered, Minneapolis, for William A. Bogatzki, et al.

George Eck, Raymond A. Hayward, Dorsey & Whitney, Minneapolis, for Norman H. Hoffman.

John H. Faricy, Jr., Pustorino, Pederson, Tilton & Parrington, Minneapolis, for Technical Ordnance, Inc.

Heard, considered and decided by HUSPENI, P.J., CRIPPEN and HACHEY *, JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. 6, § 2.

## OPINION

HUSPENI, Judge.

This is an appeal from a partial summary judgment dismissing appellants' wrongful death claims against respondent Norman Hoffman (Hoffman). Appellants claim that a provision which had the indirect effect of absolving Hoffman from liability was mistakenly included in a *Pierringer* release agreement. Appellants thus argue the trial court erred in failing to reform or rescind the agreement or, in the alternative, to rule there was a material question of fact precluding summary judgment.

Hoffman also requested the trial court order summary judgment against appellants on their claim of intentional infliction of emotional distress. The trial court denied Hoffman's motion, finding there existed a question of material fact. Hoffman now seeks review of this portion of the trial court's decision. We reverse and remand in part, and dismiss in part.

## FACTS

Darlene Bogatzki was killed while working on the premises of her employer, Technical Ordnance (Tech Ord). Her husband, as trustee for her heirs, and various heirs in their personal capacities (appellants), brought this action against Norman H. Hoffman, Aetna Life and Casualty Company and various other persons.

Hoffman was CEO and sole shareholder of Tech Ord, and owned all the real estate upon which Tech Ord conducted its business. The complaint against Hoffman alleged negligence in his capacities as lessor and owner of the premises and as employee and officer of Tech Ord.[1] The complaint against him also alleged intentional infliction of emotional distress in connection with clean-up of the premises after the explosion.

On December 17, 1985, Hoffman impleaded Tech Ord on a third-party claim for "indemnity, contribution, or such other re-

1. The claims against Hoffman as employee and officer of Tech Ord were subsequently dismissed by the trial court as barred by applicable workers' compensation law.

lief as is just and equitable under the comparative negligence laws of the State of Minnesota."

In 1986, appellants engaged in settlement negotiations with defendant Factory Mutual Engineering Association. A specially tailored *Pierringer* release agreement was drafted to accommodate Factory Mutual's requirement that appellants indemnify it for all common law, equitable or contractual contribution or indemnity claims. The *Pierringer* agreement was subsequently executed and Factory Mutual was dismissed from the case.

Appellants also negotiated with Aetna Life and Casualty Company, which was involved in the lawsuit in two capacities: as direct defendant due to its alleged negligence in inspecting the premises, and in its capacity as workers' compensation insurer for Tech Ord. One attorney represented Aetna in its capacity as direct defendant. A second attorney was hired by Aetna to represent Tech Ord, pursuant to Aetna's duty to provide for the defense of its insured. Initial negotiations between Aetna and appellants were conducted by appellants' attorney and the attorney representing Aetna as a direct defendant. These parties reached a tentative agreement for Aetna to pay appellants $25,000 in return for appellants' releasing Aetna in its capacity as direct defendant. Learning of this tentative settlement, the attorney representing Tech Ord as the workers' compensation insured contacted Aetna and appellants to express his interest in joining in a *Pierringer* release on behalf of Tech Ord.

The facts surrounding the negotiations amongst these three parties are sketchy. The parties concur that there was an oral agreement for appellants to release all claims against Tech Ord in return for Tech Ord's assignment of all subrogation rights it had under workers' compensation law. *See* Minn.Stat. § 176.061 (1986). The parties had calculated that Tech Ord's total workers' compensation liability would be around $27,000.

Appellants' attorney subsequently drafted a *Pierringer* release, using the previous Factory Mutual *Pierringer* release as a basis from which to draft the new agreement. However, he inadvertently failed to remove the language concerning contractual contribution or indemnity. The agreement which was finally drafted and executed thus read, in part:

> I [appellants] agree to indemnify and save harmless Aetna and Technical Ordnance, Inc. from any claims for common law, equitable, or *contractual* contribution or indemnity made by any other party or person who or which is or are adjudged or otherwise determined to be liable * * *.

(Emphasis added.)

All parties agree that no one ever discussed the possibility of Norman Hoffman's being totally absolved of liability. Both appellants' attorney and direct defendant Aetna's attorney executed affidavits stating that, "[a]lthough the *Pierringer* release makes reference to indemnification for contractual liability, the agreement was only intended to cover indemnification for liability based upon principles of comparative negligence and joint and several liability." Tech Ord's attorney did not provide an affidavit but he did admit that

> it was my understanding when I read that release, or it was my impression that it was broad, and probably overly broad, but it did favor my client, Tech Ord.

There is little else in the record to indicate the beliefs of Tech Ord's attorney as to the intent and effect of the indemnity provision.

After learning of the executed *Pierringer* release, and believing that the effect was to entirely shield him from liability, Norman Hoffman made several motions designed to dismiss himself from the case. He relied on the following provision contained in the lease agreement between Tech Ord and him covering the premises where Darlene Bogatzki was killed.

> Tenant [Tech Ord] shall indemnify and save harmless lessor [Hoffman] against and from any and all claims by or on behalf of any person or persons for personal injury, wrongful death or property damage arising out of any act or occurrence committed or happening in or from the premises.

Hoffman moved to amend his third-party complaint to include a claim for contractual indemnification from Tech Ord. He also moved for summary judgment on the issue of his liability as lessor or owner of the property. He argued he could not be liable to appellants because he had a full indemnity from Tech Ord and Tech Ord, in turn, had full indemnity from appellants. Finally, he moved for summary judgment on the claim of intentional infliction of emotional distress, arguing that the evidence was insufficient to support that claim.

Appellants opposed these motions and moved for reformation or rescission of the *Pierringer* release on the basis that it did not reflect the true intent of the three parties to the agreement.

The trial court granted Hoffman's motion to amend his third-party complaint to reflect a claim for contractual indemnification against Tech Ord. Noting that indemnity agreements are strictly construed when a party seeks to be indemnified for its own negligence, the trial court also ruled that the lease's indemnity agreement passed this strict construction test. The trial court then granted partial summary judgment for Hoffman on the issue of his liability as owner or lessor, stating that any mistake concerning the effect of the *Pierringer* release was unilateral, not mutual. The trial court, therefore, concluded there were no grounds for reformation or rescission of the contract. The trial court ruled further, however, that the indemnity provision did not protect Hoffman against liability for intentional torts and that questions of material fact remained. Therefore, Hoffman's motion for summary judgment on the emotional distress claim was denied.

Appellants appeal the summary judgment on Hoffman's liability as lessor or owner. Hoffman seeks review of the denial of his motion for summary judgment on the emotional distress issue.

## ISSUES

1. Did the trial court abuse its discretion in allowing Hoffman to amend his third party complaint?

2. Are Hoffman's claims for contribution and indemnity barred by the statute of limitations?

3. Does the indemnity and contribution agreement contained in the lease between Tech Ord and Hoffman apply to claims arising out of Hoffman's negligence?

4. Did the trial court err in ordering, by way of summary judgment, that the parties' *Pierringer* release agreement could not be reformed or rescinded?

5. Did the trial court err in denying summary judgment in favor of Hoffman on appellants' claims of intentional infliction of emotional distress?

## ANALYSIS

### I.

■ It is within the trial court's discretion to decide when a party may amend its pleadings. *R.B. Thompson, Jr. Lumber Co. v. Windsor Development Corp.*, 383 N.W.2d 357, 362 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 22, 1986). Among other things, the trial court should weigh the prejudice to the opposing party against the prejudice to the moving party if leave to amend is denied. *Wilson v. City of Eagan*, 297 N.W.2d 146, 151 (Minn.1980).

■ Although Hoffman's original third-party complaint does not specifically set forth a claim for contractual indemnity, it is clear from Hoffman's two subsequent summary judgment motions that he sought indemnity from Tech Ord pursuant to the lease agreement as well as under comparative fault principles. There should have been no surprise or prejudice from Hoffman's seeking to amend his complaint to conform with the arguments he had been making from as early as a month and one-half after serving his original pleading. The trial court, therefore, was within its discretion in allowing Hoffman to amend his third-party complaint.

### II.

■ The next question is whether Hoffman's indemnity and contribution claims

are barred by the applicable statute of limitations. *See* Minn.Stat. § 541.051, subd. 1 (1986), as amended by 1988 Minn. Laws, ch. 607 §§ 1, 3. The amended statute of limitations now provides:

> [N]o * * * action for contribution or indemnity for damages sustained on account of the injury shall be brought * * * more than two years * * * after accrual of the cause of action. * * *

1988 Minn. Laws, ch. 607, § 1. It further provides:

> [A] cause of action accrues, * * * in the case of an action for contribution or indemnity, upon payment of a final judgment, arbitration award or settlement * * *.

*Id.* The 1988 amendment was expressly made effective to all actions pending on April 25, 1988. *Id.,* § 3. Because this action was pending on April 25, 1988, the amendment applies. *See County of Hennepin ex rel. Bartlow v. Brinkman,* 378 N.W.2d 790, 792 (Minn.1985) ("[A]n action on appeal shall be regarded as a pending action * * *.") Therefore, Hoffman's claim for contribution and indemnity, asserted on December 17, 1985, was timely commenced.

### III.

■ The final preliminary issue is whether the indemnity agreement in the Hoffman–Tech Ord lease is enforceable. Indemnity agreements are to be strictly construed when the indemnitee seeks to be indemnified for its own negligence. *Farmington Plumbing & Heating Co. v. Fischer Sand and Aggregate, Inc.,* 281 N.W.2d 838, 842 (Minn.1979). The contract need not expressly refer to negligence, however, if the language of the contract necessarily includes claims of the indemnitor's negligence. *Johnson v. McGough Construction Co., Inc.,* 294 N.W.2d 286, 288 (Minn. 1980); *see also Osgood v. Medical, Inc.,* 415 N.W.2d 896, 902–03 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Feb. 12, 1988). The test is whether the language is so broad that it necessarily applies to negligence. *Osgood,* 415 N.W.2d at 902 (citing *Johnson,* 294 N.W.2d at 288).

The lease provision indemnified Hoffman for claims of personal injury, wrongful death and property damage. Personal injury and wrongful death actions are usually based, at least in part, on claims of negligence. Inclusion of the term "negligence" would not have more clearly expressed the scope of indemnity and may actually have raised a question whether the provision applied only to negligence. *See id.,* 294 N.W.2d at 288. We therefore conclude the indemnity provision is broad enough to indemnify Hoffman for his own negligence.

### IV.

■ A written contract can be reformed by a court if the following elements are proved:

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980). These elements must be established by evidence which is clear and consistent, unequivocal and convincing. *Id.* The trial court's duty in a summary judgment motion, however, is not to resolve factual issues, but simply to determine whether the material facts are disputed. *Albright v. Henry,* 285 Minn. 452, 464, 174 N.W.2d 106, 113 (1970). The moving party has the burden of establishing there is no fact issue. *See Bixler by Bixler v. J.C. Penney Co., Inc.,* 376 N.W. 2d 209, 215 (Minn.1985).

As to the first element, the parties to the *Pierringer* release agree there was an oral agreement which provided:

> 1. Aetna would pay $25,000 for full release of Aetna as direct defendant;
> 2. Appellant would indemnify Tech Ord in return for Tech Ord's subrogation rights to collect against Hoffman for amounts paid by Tech Ord for workers compensation benefits.

The crucial question raised is if there is a factual dispute over whether the written

agreement failed to express the parties' intent and whether that failure resulted from a mutual mistake.

Two of the attorneys involved agree they did not intend the agreement to include the provision whereby appellants indemnified Tech Ord against claims for contractual indemnity. What the third attorney intended and understood is not so clear. He admitted that no one ever discussed the possibility of either directly or indirectly releasing Hoffman from liability. It is also apparent his main concern in intervening in the settlement between appellants and Aetna was to handle Tech Ord's workers' compensation obligation. There is no evidence the third attorney was considering Tech Ord's contractual obligation to indemnify Hoffman when he was negotiating. The record reflects only that he thought the agreement was "broad, and probably overly broad." Consequently, we conclude there is an issue of material fact concerning Tech Ord's attorney's intent and understanding in entering into the *Pierringer* release. Summary judgment was inappropriate.

A contract may also be rescinded on the basis of mutual mistake, or unilateral mistake induced or contributed to by the other party. *Gethsemane Lutheran Church v. Zacho*, 258 Minn. 438, 443–44, 104 N.W.2d 645, 649 (1960). As discussed above, the question of mistake is a disputed factual issue dependent upon Tech Ord's attorney's intent and knowledge in entering into the *Pierringer* release. Therefore, summary judgment is also not appropriate on the matter of rescission.

Hoffman's reliance on *Hoffman v. Wiltscheck*, 411 N.W.2d 923 (Minn.Ct.App.1987) is misplaced. In *Hoffman*, all parties concurred in the language of the *Pierringer* agreement. The claimed mistake was in the legal effect of that agreed-upon language. In the present case, it is not clear what Tech Ord's attorney intended the agreement to cover, nor what he believed it covered. Depending on the parties' intent, they could have drafted their settlement agreement either to release or to preserve claims against Hoffman.

## V.

Finally, Hoffman seeks review of the denial of his summary judgment motion on the issue of intentional infliction of emotional distress.

An order denying summary judgment is not appealable in the absence of trial court certification as important and doubtful. Minn.R.Civ.App. P. 103.03(h). Although discretionary review may be available pursuant to Minn.R.Civ.App. P. 103.04 in appropriate circumstances, we decline to grant such review in light of our remand of this matter for factual determinations on other issues. Hoffman's notice of review is dismissed.

## DECISION

We reverse and remand for determination of the intent and knowledge of Tech Ord's attorney in entering into the settlement agreement, and thereafter for appropriate reconsideration of the issues of reformation or rescission. Respondent's notice of review is dismissed.

Reversed and remanded in part; dismissed in part.