Craig DEWITT, Cross-Appellant,

v.

LONDON ROAD RENTAL CENTER, INC., Respondent,

Jach's, Inc., d/b/a The Tower Tap & Restaurant, et al., Appellants,

Marlee Enterprise, Inc., Defendant.

A16-1794

Court of Appeals of Minnesota.

Filed August 7, 2017

Scott Wilson, Minneapolis, Minnesota; and Robert Edwards, Robert N. Edwards, Chtd., Anoka, Minnesota (for cross-appellant).

Jacob M. Tomczik, Cheryl Hood Langel, McCollum, Crowley, Moschet, Miller & Laak, Ltd., Minneapolis, Minnesota (for respondent).

Timothy P. Tobin, Abigail A. Pettit, Gislason & Hunter LLP, Minneapolis, Minnesota (for appellants).

Considered and decided by Schellhas, Presiding Judge; Halbrooks, Judge; and Smith, John, Judge.\*

Minn. Const. art. VI, § 10.

## OPINION

SCHELLHAS, Judge

This appeal is taken from a judgment in an action arising out of personal injuries suffered by cross-appellant Craig DeWitt[1] while seated at a picnic table that appellants Jach's, Inc., d/b/a The Tower Tap & Restaurant, and Chester Morgan (collectively, Tower Tap) rented from respondent London Road Rental Center, Inc. DeWitt argues that the district court erred by dismissing his res ipsa loquitur claim against Tower Tap and imposing discovery sanctions for his failure to produce unlimited medical authorizations. Tower Tap argues that the district court erred by enforcing exculpatory and indemnity clauses in the rental contract to require them to pay London Road's attorney fees and costs. Because we conclude that the district court erred by dismissing DeWitt's res ipsa loquitur claim but otherwise reject the arguments on appeal, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

Tower Tap rented folding picnic tables from respondent London Road for use on Tower Tap's premises during Ma and Pa Kettle Days in August 2012. Upon delivery of the tables, Tower Tap signed a contract that contains both exculpatory and indemnification clauses.

DeWitt visited Tower Tap on the evening of August 11, 2012, and sat at one of the picnic tables. Around 11:00 p.m., the picnic table collapsed, pinning DeWitt's hips between the tabletop and the bench seat. DeWitt suffered serious injuries that required surgery to his left hip and aggravated preexisting low back pain and a previous shoulder injury. Following the incident, both Tower Tap and London Road examined the picnic table without determining what caused it to collapse.

DeWitt commenced this action against Tower Tap and London Road, seeking to hold both liable for negligence and relying in part on the doctrine of res ipsa loquitur. Tower Tap asserted a cross-claim against London Road for common-law indemnity, and London Road asserted cross-claims for contractual indemnity and contribution.

Under the requirements of Minn. R. Civ. P. 35.04, DeWitt executed authorizations for the release of his medical records. DeWitt gave an unlimited release for providers who had treated him only for injuries suffered at Tower Tap, but limited his authorization for release of records from other providers to left hip, low back, and right shoulder pain and injuries. After unsuccessfully conferring on the issue, Tower Tap moved to compel DeWitt to provide unlimited authorizations and sought attorney fees and costs in connection with its motion. The district court granted Tower Tap's motion and fee request, ordering DeWitt's counsel, Robert Edwards, to pay $2,284 in attorney fees and $246.62 in costs.

Both Tower Tap and London Road moved for summary judgment. The district court granted summary judgment to Tower Tap on DeWitt's claim of res ipsa loquitur and granted summary judgment against Tower Tap on its claim for common-law indemnity and liability and to London Road on its claim for contractual indemnity.[2] The court subsequently en-

---

1. The district court caption identifies cross-appellant as Craig Dewitt, and the caption of the case shall not change in consequence of the appeal. Minn. R. Civ. App. P. 143.01. But because the parties in their briefs identify cross-appellant as Craig DeWitt, we use DeWitt.

2. The district court also granted summary judgment to London Road on all of DeWitt's

tered a $19,809.20 costs-and-disbursements judgment against DeWitt and in favor of Tower Tap and a stipulated $47,000 judgment against Tower Tap and in favor of London Road on its contractual indemnity claim.

This appeal by DeWitt and Tower Tap follows.

## ISSUES

I. Did the district court err by granting summary judgment to Tower Tap on DeWitt's res ipsa loquitur claim?

II. Did the district court err by awarding attorney fees and costs as a discovery sanction for DeWitt's failure to provide unlimited medical releases?

III. Did the district court err by granting summary judgment to London Road on Tower Tap's common-law indemnity claim and London Road's contractual indemnity claim?

## ANALYSIS

### I.

DeWitt asserts that the district court erred by granting summary judgment to Tower Tap on his negligence claim that is based on the doctrine of res ipsa loquitur. This court reviews de novo the grant of summary judgment. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002). "In general the doctrine of res ipsa loquitur permits an inference of negligence from the circumstances of an accident." *Johnson v. W. Fargo Mfg. Co.*, 255 Minn. 19, 25, 95 N.W.2d 497, 502 (1959). For the doctrine to apply:

(1) The event must be of a kind which ordinarily does not occur in the absence of someone's negligence; [2] it must be

caused by an agency or instrumentality within the exclusive control of the defendant; and [3] it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn. 1980) (citing *Spannaus v. Otolaryngology Clinic*, 308 Minn. 334, 337, 242 N.W.2d 594, 596 (1976)). At the summary-judgment stage of proceedings, a plaintiff need not definitively establish each element but must point to "enough evidence that the three conditions exist so as to make it a jury question as to whether they exist or not." *Stearns v. Plucinski*, 482 N.W.2d 496, 498 n.2 (Minn. App. 1992); *see also Stelter v. Chiquita Processed Foods, L.L.C.*, 658 N.W.2d 242, 247 (Minn. App. 2003) ("Once a plaintiff makes a prima facie case for res ipsa loquitur, the [jury] instruction must be given.").

The district court determined that DeWitt cannot meet the second, exclusive-control element required under the res ipsa loquitur doctrine. The Minnesota Supreme Court has not expressly defined the "exclusive control" element but has cautioned that "control [must be] seen as a flexible term." *Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 863 (Minn. 1984) (citing W. Prosser, *Law of Torts* § 39, at 218–21 (4th ed. 1971)). The requisite control may be exercised at the time of the negligence or at the time of the resulting injury. *Peterson v. Minn. Power & Light Co.*, 207 Minn. 387, 391, 291 N.W. 705, 707 (1940). Although the doctrine cannot apply in cases of "divided control," it can apply when the jury can conclude "that the instrumentality was never improperly used, touched or interfered with in any way" after the defendant relinquished control, such that "[t]he control that defendant ex-

---

claims. The court also subsequently granted Tower Tap's motion to exclude DeWitt's expert and granted summary judgment to Tow-

er Tap on DeWitt's ordinary negligence claim. None of these rulings is at issue on appeal.

ercised carried over to the time of the occurrence of the injury." *Peterson*, 207 Minn. at 391, 291 N.W. at 707.

Applying these principles, we conclude that DeWitt presented sufficient evidence to proceed with his negligence claim under the res ipsa loquitur doctrine. Importantly, DeWitt's claim is grounded in premises liability, under which Tower Tap had a duty to inspect and maintain the safety of its premises for invitees like DeWitt. *See Olmanson v. LeSueur County*, 693 N.W.2d 876, 881 (Minn. 2005). The corporate representative for London Road testified that the tables had been rented previously without incident, and that the tables were cleaned and inspected after each rental. And DeWitt testified that the table was empty when his group arrived at Tower Tap and that he did not tamper with the picnic table. Under the foregoing caselaw, this evidence is sufficient to support an inference of negligence by Tower Tap in inspecting and maintaining the safety of its premises.

Tower Tap argues that DeWitt is precluded from proceeding with his negligence claim under a res ipsa loquitur theory because the picnic table might have collapsed due to a latent defect or third-party tampering, which were undiscovered by Tower Tap even in the absence of negligence. This argument misapprehends the purpose and operation of the res ipsa loquitur doctrine. Although "the doctrine has no application where all of the facts and circumstances appear in evidence" or "where the cause of the accident is known and is not in question," *Johnson*, 255 Minn. at 25–26, 95 N.W.2d at 502, "the mere presence or possibility of other causes is not sufficient to preclude the inference of negligence on the part of defendant where the evidence reasonably excuses those causes." *Rinkel v. Lee's Plumbing & Heating Co.*, 257 Minn. 14, 19, 99 N.W.2d 779, 783 (1959). Indeed, to require a plaintiff to disprove any other possible causes of his or her injury would effectively require the plaintiff to prove his or her claim without the benefit of the inference that the res ipsa loquitur doctrine allows, thereby depriving the doctrine of any effective use. *See, e.g., Curtis v. Lein*, 169 Wash.2d 884, 239 P.3d 1078, 1083 (2010) (explaining that res ipsa loquitur can apply unless evidence is *completely* explanatory of how an accident occurred" another way); *Cunningham v. Hayes*, 463 S.W.2d 555, 562 (Mo. Ct. App. 1971) (reasoning that requiring a plaintiff to exclude any other cause would "undermine the doctrine").

" 'When the injury might, *with equal probability*, have resulted from the acts of others as well as from the acts of defendant, proof of facts, other than of injury, from which defendant's negligence can be inferred must be made before the question can be submitted to the jury.' " *Olson v. St. Joseph's Hosp.*, 281 N.W.2d 704, 708 (Minn. 1979) (quoting *Collings v. Nw. Hosp.*, 202 Minn. 139, 144, 277 N.W. 910, 912 (1938) (emphasis added)).[3] Once other possible causes have been sufficiently eliminated, the plaintiff is entitled to argue the res ipsa inference, the defendant is entitled to argue other causes, and the jury must determine "whether or not facts exist that will support the application of the res ipsa loquitur theory." *Olson*, 281 N.W.2d at 709; *see Stahlberg v. Moe*, 283 Minn. 78, 83, 166 N.W.2d 340, 344 (Minn. 1969) ("[W]here there is evidence of other possi-

---

**3.** In *Olson*, the Minnesota Supreme Court rejected language from older cases holding that "res ipsa loquitur will not be applied if the occurrence *could have* happened from causes other than defendant's negligence," and stated that *Collings* "carefully and correctly states the rule with regard to the nonapplicability of res ipsa loquitur where other possible causes are present." 281 N.W.2d at 708 (emphasis added and quotation omitted).

ble causes of plaintiff's injury·which would not involve a breach of duty on the part of the defendant, and men of ordinary intelligence could reasonably accept one of these causes, defendant's liability becomes a jury question."); *see also Finocchio v. Crest Hollow Club at Woodbury, Inc.*, 184 A.D.2d 491, 584 N.Y.S.2d 201, 202 (1992) (explaining that purpose of control requirement "is simply to eliminate, *within reason,* all explanations for the accident other than the defendant's negligence" (emphasis added)); Restatement (Second) of Torts § 328D(1)(b) (characterizing second element in terms of whether "other responsible causes, including the conduct of the plaintiff and third persons, are *sufficiently* eliminated by the evidence" (emphasis added)).

Based on the foregoing, we reject Tower Tap's argument that the mere possibility of a latent defect or third-party tampering precludes DeWitt from proceeding with his negligence claim under the res ipsa loquitur doctrine. The district court therefore erred by holding that res ipsa loquitur cannot apply because of the possibility that the picnic table collapsed because of something other than Tower Tap's negligence. Courts in numerous jurisdictions have held

that, when an individual is injured because a chair collapses in a commercial establishment, the individual may proceed with a negligence claim under the doctrine of res ipsa loquitur. *See, e.g., Trujeque v. Serv. Merch. Co.*, 117 N.M. 388, 872 P.2d 361, 364–65 (1994) (collecting cases).[4] An often-cited case holding that res ipsa does not apply, *Kilgore v. Shepard Co.*, 52 R.I. 151, 158 A. 720 (1932), has been criticized as overly restrictive by numerous courts, including the Minnesota Supreme Court. *See Peterson*, 207 Minn. at 390, 291 N.W. at 707; *see also Trujeque*, 872 P.2d at 365 (noting criticism of *Kilgore*). We·conclude that DeWitt put forth sufficient evidence on each of the res ipsa elements to argue the res ipsa inference to the jury. Accordingly, we reverse the district court's grant of summary judgment to Tower·Tap on DeWitt's res ipsa claim and remand·for further proceedings consistent with this decision.

## II.

DeWitt also challenges the district court's award of attorney fees and costs under Minn. R. Civ. P. 37.01(d). We note that the district court found that the sanc-

---

4.  Tower Tap argues that this court should not follow *Trujeque* and related cases because they derive from states that have adopted the "California rule," which allows for application of the res ipsa loquitur doctrine in cases in which multiple defendants exercised collective control over the instrumentality that caused the injury. *See Ybarra v. Spangard*, 25 Cal.2d 486, 154 P.2d 687, 691 (1944). *Ybarra* addressed a situation in which multiple defendants collectively, indisputably, and concurrently have control over the instrumentality causing the injury. *Id.* at 688. In that circumstance, an inference cannot be made that any one of those defendants would be responsible for negligence occurring during that period of collective control. *See Spannaus*, 308 Minn. at 337, 242 N.W.2d at 597 (noting that no single defendant has control under California rule). A similar conclusion can be reached in cases

in which a claimant cannot establish who had control of the particular instrumentality causing the injury. *See, e.g., Leuer v. Johnson*, 450 N.W.2d 363, 366 (Minn.App. 1990) (holding that res ipsa doctrine could not apply in case where two hunters fired their guns almost simultaneously and it could not be determined which gun caused the injury).

In this case, Tower Tap had exclusive control over the inspection and use of the picnic table, i.e., the instrumentality that caused the injury, by virtue of its ownership of the premises on which the table was located. The existence of that control permits an inference that Tower Tap's negligence caused the picnic table to collapse. Whether the conduct of some other person actually caused the table to collapse goes not to the question of control but to the jury's ultimate determination of negligence.

tion would pose a hardship on DeWitt, so the court ordered DeWitt's attorney, Robert Edwards, to pay the award. *See* Minn. R. Civ. P. 37.01(d) (providing for sanctions against a party, his counsel, or both). Edwards therefore is the proper party to challenge the award, and he did not file a notice of related appeal. *See, e.g., Hammerlind v. Clear Lake Star Factory Skydiver's Club*, 258 N.W.2d 590, 592 (Minn. 1977) (holding that parties not aggrieved by district court order have no standing to appeal). Even if we were to construe DeWitt's notice of appeal to be filed on behalf of Edwards as well, we would reject his challenges to the award of attorney fees and costs.

We review the district court's fees-and-costs award for an abuse of discretion. *See Muehlstedt v. City of Lino Lakes*, 473 N.W.2d 892, 900 (Minn.App. 1991). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is inconsistent with the facts in the record." *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 508 (Minn. 2012).

The district court awarded attorney fees and costs incurred by Tower Tap in bringing a motion to compel DeWitt to provide unlimited medical releases. Minn. R. Civ. P. 35.03 provides that:

> If at any stage of an action a party voluntarily places in controversy the physical, mental, or blood condition of that party, a decedent, or a person under that party's control, such party thereby waives any privilege that party may have in that action regarding the testimony of every person who has examined or may thereafter examine that party or the person under that party's control with respect to the same physical, mental, or blood condition.

Minn. R. Civ. P. 35.04 requires a party who has waived privilege pursuant to rule 35.03 to provide, "within ten days of a written request by any other party ... written authority signed by the party ... to permit the inspection of all hospital and other medical records, concerning the physical, mental, or blood condition of such party as to which privilege has been waived." And, under Minn. R. Civ. P. 37.01(d), a district court granting a motion to compel shall award the moving party reasonable expenses incurred in bringing the motion, unless, as relevant here, the court finds that the failure to disclose was "substantially justified."

"Substantially justified" is not defined by the rules. But the U.S. Supreme Court has interpreted the term "substantially justified" in the context of fee awards under the Federal Equal Access to Justice Act to mean "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person," and "more than merely undeserving of sanctions for frivolousness." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *see also Donovan Contracting Inc. v. Minn. Dep't of Transp.*, 469 N.W.2d 718, 720 (Minn. App. 1991) (adopting *Pierce* standard in interpreting Minnesota Equal Access to Justice Act), *review denied* (Minn. Aug. 2, 1991).

DeWitt refused to provide unlimited medical releases based on his assertion that this action resulted in a limited waiver of his physician-patient privilege, extending only to medical records regarding left hip pain/injury, low back pain/injury, and right shoulder pain/injury. The district court rejected the argument for limited waiver, reasoning that "because the allegations in this matter are fairly broad, the Court believes that the request of all records held by [DeWitt's] general practitioner ... is reasonable and it must therefore grant [Tower Tap's] motion to compel."

The district court also granted Tower Tap's request for attorney fees and costs, based on the mandatory language of rule 37.01(d), noting that it was "confounded" by DeWitt's failure to provide the requested releases and that,

> [c]ontrary to Plaintiff's counsel's contentions, one of the downsides to pursuing a personal injury lawsuit is opening yourself and your medical history up for scrutinizing. Under the Minnesota Rules you voluntarily waive your medical privilege and cannot deny the opposing side access to records that may lead to admissible evidence.

On appeal, Edwards renews his assertion that the Minnesota rules recognize a limited waiver of the physician-client privilege, tailored to specific medical conditions put in issue by a party. But he cites no binding Minnesota authority that supports parsing a party's physical condition, i.e., medical conditions, in this manner, and we are aware of none. *Contra* Minn. R. Civ. P. 35.03 (stating that privilege is waived when "party voluntarily places in controversy *the* physical, mental, or blood condition of that party") (emphasis added); *Wagner v. Thomas J. Obert Enters.*, 396 N.W.2d 223, 228 (Minn. 1986) (stating that rule applies "[i]f a patient voluntarily places her health in controversy"); *Wenninger v. Muesing*, 307 Minn. 405, 410, 240 N.W.2d 333, 336 (1976) ("The policy underlying Rule 35.03 is the full disclosure of all relevant medical evidence concerning plaintiff's health when he voluntarily puts his health in issue by bringing a lawsuit."). But we need not determine whether circumstances might ever support a limited waiver of the physician-patient privilege in a personal-injury action. Rather, we conclude that the district court did not err in this case by concluding that DeWitt's arguments for a limited waiver were not substantially justified.

DeWitt indisputably placed in controversy his physical condition by bringing a lawsuit to recover for personal injuries, including past and future pain, suffering, disability, disfigurement, and loss of enjoyment of life. The district court found these allegations to be broad enough to warrant an unlimited release of medical records from DeWitt's general practitioner and it concluded that DeWitt was not substantially justified in arguing for more limited releases. The substantial-justification standard of rule 37.03 requires a showing greater than that which Edwards made, to avoid an award of attorney fees. On this record, we cannot conclude that the district court's findings were clearly erroneous or that it abused its discretion by awarding attorney fees and costs under rule 37.01(d).

## III.

Tower Tap asserts that the district court erred by ruling on summary judgment that the exculpatory and indemnity clauses in the contract are enforceable. We review de novo the legal issues of the interpretation and enforceability of a contract. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012); *Share Health Plan, Inc. v. Marcotte*, 495 N.W.2d 1, 3 (Minn.App. 1993), *review denied* (Minn. Mar. 30, 1993).

### A. *Exculpatory Clause*

Exculpatory clauses are disfavored in the law and "will be strictly construed against the benefited party." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982). Exculpatory clauses will not be enforced if they are "ambiguous in scope or purport[ ] to release the benefited party from liability for intentional, willful, or wanton acts," or if their enforcement would contravene public policy. *Id.*

Tower Tap argues that the exculpatory clause in the parties' contract violates public policy. Minnesota courts apply a two-part test to determine whether an exculpatory clause comports with public policy, examining

> (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision); and (2) the types of services being offered or provided (taking in consideration whether it is a public or essential service).

*Id.* (citations omitted).

"A disparity of bargaining power ... may exist where the services provided are necessary or unavailable elsewhere; where there is a compulsion to participate in the activity; and where there is no opportunity to negotiate the terms of the exculpatory agreement." *Beehner v. Cragun Corp.*, 636 N.W.2d 821, 827 (Minn.App. 2001), *review denied* (Minn. Feb. 28, 2002). Contracts of adhesion are generally understood to reflect a disparity of bargaining power. *See Schlobohm*, 326 N.W.2d at 924 (discussing disparity of bargaining power in terms of whether contract was one of adhesion). "By definition, an adhesion contract is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Id.* But "[e]ven though a contract is on a printed form and offered on a 'take it or leave it' basis, those facts alone do not cause it to be an adhesion contract." *Id.* Rather, "[t]here must be a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation *and* that the services could not be obtained elsewhere." *Id.* at 924–25.

"In examining whether the type of service being offered is a public or essential service, the courts consider whether it is the type generally thought suitable for public regulation." *Id.* at 925. "Types of services thought to be subject to public regulation have included common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers, and services involving extra-hazardous activities." *Id.* (footnotes omitted). This court has distinguished cases involving recreational services that individuals are under no compulsion to purchase from cases in which individuals were compelled to sign releases to obtain services necessary to their livelihoods. *See Beehner*, 636 N.W.2d at 828 (holding that horseback riding is not a necessary or public service and distinguishing *Bunia v. Knight Ridder*, 544 N.W.2d 60, 63 (Minn.App. 1996) ("invalidating exculpatory clause in newspaper carrier's contract because [income] was essential and carrier assented to clause from a position of inferior bargaining power"), *review denied* (Minn. May 9, 1996) and *Walton v. Fujita Tourist Enters. Co.*, 380 N.W.2d 198, 201 (Minn.App. 1986) (invalidating exculpatory clause in familiarization trip contract between travel agent and airline because airline "had a virtual monopoly on such trips ... services were unique and unavailable elsewhere and were of practical necessity" to travel agents), *review denied* (Minn. Mar. 21, 1986)).

In this case, neither of the two criteria for invalidating an exculpatory clause on public policy grounds is met. With respect to the first part, the record does not reflect a disparity of bargaining power between Tower Tap and London Road. As the district court noted, it may have been desirable, but it was not necessary for Tower Tap to rent picnic tables. Moreover, no evidence shows that Tower Tap was compelled to enter into a contract with

London Road or that the services were unavailable elsewhere. To the contrary, Tower Tap concedes that it had rented picnic tables from another provider in the past. With respect to the second part, the services provided by London Road—rentals of picnic tables and other items—are not public or essential services as that term has been applied in this context. *See Schlobohm*, 326 N.W.2d at 925.

Tower Tap attempts to characterize the services as essential by focusing on the particular circumstances in which it signed the contract in this case. In particular, Tower Tap argues that it needed the picnic tables for Ma and Pa Kettle Days, that it did not receive the contract until the tables were delivered and then was required to sign the contract in order to take delivery, and that it could not at that time have located an alternative source for the tables. As London Road observes, this urgency was of Tower Tap's own creation. Tower Tap does not assert that it was precluded from inquiring into London Road's terms before ordering the tables or that, if dissatisfied with those terms, it would have been unable to locate an alternative source for the tables. And even if the tables were not available from another source, the exculpatory clause would only be unenforceable if the rental of tables was a public or essential service. We are not persuaded that anything about operating a bar or even participating in Ma and Pa Kettle Days rendered essential the rental of the picnic tables.

The district court did not err in ruling that the exculpatory clause is enforceable, and we accordingly affirm the grant of summary judgment in favor of London Road on Tower Tap's common-law indemnity claim.

### B. Indemnity Clause

Like exculpatory clauses, indemnity clauses are strictly construed. But "[i]n-demnification clauses are subject to greater scrutiny because they release negligent parties from liability but may also shift liability to innocent parties." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 792 n.6 (Minn. 2005). "Agreements seeking to indemnify the indemnitee for losses occasioned by its own negligence are not favored by the law and are not construed in favor of indemnification unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it." *Id.* at 791. "The contract need not expressly refer to negligence, however, if the language of the contract necessarily includes claims of the indemnitor's negligence." *Bogatzki v. Hoffman*, 430 N.W.2d 841, 845 (Minn.App. 1988), *review denied* (Minn. Dec. 21, 1988). "The test is whether the language is so broad that it necessarily applies to negligence." *Id.* at 845. This court's cardinal purpose remains to determine and give effect to the intent of the parties. *See Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997) (noting that "[t]he cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract"); *see also Badiee v. Brighton Area Sch.*, 265 Mich.App. 343, 695 N.W.2d 521, 531 (2005) ("While it is true that indemnity contracts are construed strictly against the party who drafts them and against the indemnitee, it is also true that indemnity contracts should be construed to give effect to the intentions of the parties." (quotation omitted)).

The indemnification clause in this case states:

HOLD HARMLESS/INDEMNITY. You assume all risks associated with the possession, use, transportation and storage of the Equipment. ACCORDING-

LY, YOU HEREBY WAIVE ANY AND ALL LIENS AND CLAIMS ARISING FROM OR ASSOCIATED WITH, AND AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS THE RENTAL COMPANY FROM AND AGAINST, ANY AND ALL LIABILITIES, CLAIMS, DAMAGES, LOSSES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION ATTORNEYS' FEES, CLAIMS FOR BODILY INJURY(IES) (INCLUDING DEATH), PROPERTY DAMAGE, LOSS OF TIME AND/OR INCONVENIENCE) RESULTING FROM OR ARISING IN CONNECTION WITH SUCH POSSESSION, USE, TRANSPORTATION AND/OR STORAGE, REGARDLESS OF THE CAUSE AND INCLUDING ANY INJURIES AND/OR DAMAGES SUFFERED BY YOU, YOUR EMPLOYESS AND/OR ANY THIRD PARTY(IES), EXCEPT TO THE EXTENT DIRECTLY RESULTING FROM OUR INTENTIONAL MISCONDUCT.

We conclude that this indemnification language "necessarily includes claims of the indemnitor's [London Road's] negligence." *Bogatzki*, 430 N.W.2d at 845. We acknowledge that the indemnity clause in this case does not expressly state that Tower Tap will indemnify London Road for claims for which London Road is, or may be claimed to be, liable. *See Johnson v. McGough Constr. Co.*, 294 N.W.2d 286, 287–88 (Minn. 1980) (holding that such language in a subcontract expressed an intent for indemnification of claims based on contractor's negligence). But the language of the clause excepting from indemnification claims arising out of London Road's intentional misconduct necessarily means that claims arising out of London Road's negligence *are* subject to indemnification. As the district court noted, "to [conclude] oth-erwise would make the entire clause non-sensical."

Tower Tap argues that this analysis implies an indemnification requirement in violation of Minnesota caselaw. *See Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.*, 281 N.W.2d 838, 842 (Minn. 1979) (holding that obligation to indemnify "will not be found by implication"). We disagree; we instead conclude that the analysis properly considers the contract as a whole, giving effect to all of its terms. *See Art Goebel, Inc.*, 567 N.W.2d at 515; *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525–26 (Minn. 1990) (explaining that supreme court "construe[s] a contract as a whole and attempt[s] to harmonize all clauses of the contract" and "will attempt to avoid an interpretation of the contract that would render a provision meaningless").

The district court did not err in ruling that the indemnity clause is enforceable, and we accordingly affirm the grant of summary judgment on London Road's contractual indemnity claim.

## DECISION

The district court erred by granting summary judgment to Tower Tap on De-Witt's negligence claim under a res ipsa loquitur theory. But the district court did not err by granting Tower Tap attorney fees and costs incurred in bringing its motion to compel or by granting summary judgment to London Road on its contractual indemnity claim and against Tower Tap on its common-law indemnity claim.

**Affirmed in part, reversed in part, and remanded.**