CHUTICH, Justice.
This appeal presents the question of whether an indemnity clause in a rental agreement requires the renter to indemnify the rental company for the rental company's own negligence. Appellants Jach's, Inc., d/b/a The Tower Tap & Restaurant, and Chester Morgan (collectively "Tower Tap") entered into an agreement to rent folding picnic tables from respondent London Road Rental Center, Inc. ("London Road") for its annual Ma and Pa Kettle Days event in 2012. Craig DeWitt, the plaintiff at trial, attended Tower Tap's event and injured his hip after one of the rented tables unexpectedly collapsed on him while he was sitting at the table. DeWitt sued Tower Tap and London Road.
London Road filed a cross-claim against Tower Tap, invoking the indemnity clause in the rental agreement. The district court granted summary judgment to London Road, concluding that although the indemnity clause did not expressly include London Road's own negligence within its scope, the clause's broad language necessarily included coverage for London Road's negligence. The court of appeals affirmed. Because the indemnity clause did not include express language that clearly and unequivocally showed the parties' intent to transfer such liability to Tower Tap, we decline to infer such liability. Accordingly, we reverse the decision of the court of appeals and remand to the district court.
FACTS
In August 2012, Tower Tap hosted live music and dancing in a parking lot in Kettle River as part of the town's annual Ma and Pa Kettle Days festival. To provide seating for patrons during the festival, Tower Tap rented 10 folding picnic tables from London Road. Upon receiving the tables, Chester Morgan, an owner of Tower Tap, signed the front page of London Road's rental agreement, which referenced terms and conditions on the back page of the agreement. The terms and conditions included indemnity and exculpatory clauses. London Road requires that customers sign the rental agreement upon delivery of the rental equipment to the renter by London Road. After receiving the tables from London Road, Tower Tap set them up and patrons used them for about 2 days without mishap.
DeWitt[1] and a group of his friends and family attended Tower Tap's event, and they sat at one of the rented picnic tables. While seated at the table, the table unexpectedly collapsed on DeWitt, pinning his hips between the tabletop and the bench seat of the table. The collapse seriously injured DeWitt, requiring him to undergo surgery to his left hip and aggravating preexisting pain and injuries. The cause of the collapse is unknown.
DeWitt sued Tower Tap and London Road, alleging negligence and negligence based on the doctrine of res ipsa loquitur.[2]
*415 Tower Tap and London Road filed cross-claims against each other-Tower Tap sought common-law indemnity and contribution, and London Road sought contractual indemnity and common-law contribution. Tower Tap and London Road each moved for summary judgment. The district court granted London Road summary judgment on its contractual indemnity cross-claim, concluding that the terms of the rental agreement's indemnity clause required Tower Tap to defend and indemnify London Road.[3] Relying on the clause's exception for claims directly resulting from London Road's intentional misconduct, the district court concluded that the clause unequivocally covered liability for London Road's own negligence and "[t]o find otherwise would make the entire clause nonsensical." The district court dismissed Tower Tap's cross-claims against London Road. The court subsequently entered a stipulated $47,000 judgment against Tower Tap to reimburse London Road for the reasonable costs and attorney fees that it had expended in this matter.
Tower Tap appealed, and the court of appeals affirmed.[4] Dewitt v. London Rd. Rental Ctr., Inc. , 899 N.W.2d 883, 885, 892 (Minn. App. 2017). The court of appeals substantially followed the district court's reasoning, relying on the indemnity clause's exception for London Road's intentional misconduct and explaining that the clause was "so broad" that it " 'necessarily includes claims of the indemnitor's [London Road's] negligence.' " Id. at 891-92 (alteration in original) (quoting Bogatzki v. Hoffman , 430 N.W.2d 841, 845 (Minn. App. 1988), rev. denied (Minn. Dec. 21, 1988) ). The court of appeals noted that it was not inferring indemnity in violation of the holding of Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc. , 281 N.W.2d 838, 842 (Minn. 1979), superseded by statute on other grounds , Minn. Stat. § 337.02 (2017). Dewitt , 899 N.W.2d at 892. Rather, the court of appeals stated that it was "properly consider[ing] the contract as a whole, giving effect to all of its terms." Id. We granted Tower Tap's petition for review on the indemnity-clause issue.
ANALYSIS
On appeal from summary judgment, we consider (1) whether genuine issues of material fact exist; and (2) whether the district court erred in applying the law. State by Cooper v. French , 460 N.W.2d 2, 4 (Minn. 1990). We view the *416 facts in the light most favorable to the party against whom summary judgment was granted. Yang v. VoyagaireHouseboats, Inc. , 701 N.W.2d 783, 788 (Minn. 2005). And we review de novo the interpretation of the contract's indemnity clause. See Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 832 (Minn. 2012) (explaining that we review de novo the legal issues of contract interpretation and enforceability).
I.
We begin with our general rule from Farmington Plumbing & Heating . See 281 N.W.2d at 842. In Farmington , we held that for a contractual indemnity clause to obligate an indemnitor (Tower Tap here) to indemnify an indemnitee (London Road here) for the indemnitee's own negligence, the indemnity clause must use express language that clearly and unequivocally shows the parties' intent to transfer liability to the indemnitor.[5] Id. We now clarify our holding from Farmington to emphasize the language that is necessary in an indemnity provision to shift the economic risk and costs of defending against claims related to that contract from the indemnitee to the indemnitor.
We allow indemnity among joint tortfeasors only in "exceptional and limited circumstances." Hendrickson v. Minn. Power & Light Co. , 258 Minn. 368, 104 N.W.2d 843, 848 (1960), overruled in part by Tolbert v. Gerber Indus., Inc. , 255 N.W.2d 362, 366-67 (Minn. 1977). One such circumstance is "[w]here there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." Id. We have considered whether a contract clause allows indemnification for an indemnitee's own negligence in four prior cases: Farmington Plumbing & Heating Company v. Fischer Sand & Aggregate, Inc. , 281 N.W.2d 838, 842 (Minn. 1979) ; Johnson v. McGough Construction Co. , 294 N.W.2d 286, 288 (Minn. 1980) ; National Hydro Systems v. M.A. Mortenson Co. , 529 N.W.2d 690 (Minn. 1995) ; and Yang v. Voyagaire Houseboats, Inc. , 701 N.W.2d 783 (Minn. 2005).[6] These cases have set forth a consistent rule of law that we again follow here.
Although we may uphold the enforceability of a contractual indemnity clause, we disfavor agreements "seeking to indemnify the indemnitee for losses occasioned by its own negligence." Nat'l Hydro , 529 N.W.2d at 694 (emphasis added). Accordingly, we strictly construe such indemnity clauses. See Farmington , 281 N.W.2d at 842 (citing *417 Webster v. Klug & Smith , 81 Wis.2d 334, 260 N.W.2d 686, 690 (1978) ("We have held that indemnity agreements are to be liberally construed when they are concerned with the negligence of the indemnitor ... and strictly construed when the indemnitee ... seeks to be indemnified for its own negligence." (emphasis added) ) ).
For an indemnity clause to pass strict construction, the contract must include an "express provision" that "indemnif[ies] the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." Id. Such a provision need not include the word "negligence," but it must use specific, express language that "clearly and unequivocally" states the contracting parties' intent for the indemnitor to indemnify the indemnitee for the indemnitee's own negligence. Johnson , 294 N.W.2d at 288. In other words, the indemnity clause must "fairly apprise[ ]" the indemnitor (Tower Tap) of the transfer of liability and its obligation to indemnify the indemnitee (London Road), for the indemnitee's (London Road's) own negligence. Yang , 701 N.W.2d at 791 n.5.
If limiting language within the clause puts the "scope of indemnity in question," the contract's language is equivocal and the clause is unenforceable under strict construction. Nat'l Hydro , 529 N.W.2d at 694. In such a circumstance, "each tortfeasor accept[s] responsibility for damages commensurate with its own relative culpability." Farmington , 281 N.W.2d at 842 (citing Tolbert , 255 N.W.2d at 367 ). In National Hydro , for example, we held that the clause, "[claims that] arise out of or result from performance of the WORK by CONTRACTOR," limited the provision's broad language and made "an otherwise clear and unequivocal provision equivocal." 529 N.W.2d at 694. We concluded that the provision's limiting language made the provision unenforceable against someone other than the contractor. See id.
Likewise, in Yang , we held that a rental agreement's indemnity provisions were unenforceable because the provisions covered only claims "caused by the use or operation of said equipment while in [the renter's] possession" and "arising from or connected with Renter's possession, use and return of the boat, or arising at any time during the term of th[e] rental." 701 N.W.2d at 791. Strictly construing the provisions' language in Yang , we concluded that we could not "say that the language in the indemnification clauses fairly apprised [the renter] of an obligation to indemnify [the rental company] not only for his own negligence that occurred while he was using the houseboat, but also the negligence of [the rental company] that occurred before the rental term began." Id. at 795 n.5.
The test is therefore not whether the language of an indemnity clause is "so broad" that it necessarily includes the indemnitee's own negligence. Dewitt , 899 N.W.2d at 891. That test would be inconsistent with the rule we set forth in Farmington , 281 N.W.2d at 842. Rather, the proper test is whether the clause includes specific language that expressly shows, in clear and unequivocal language, that the parties intended the clause to obligate the indemnitor to indemnify the indemnitee for the indemnitee's own negligence. See Johnson , 294 N.W.2d at 288 ; Farmington , 281 N.W.2d at 842.
London Road contends that we stated a seemingly broader rule in National Hydro and Yang . We acknowledge that in these two cases we stated that we construe an indemnity clause "in favor of indemnification" only if "such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it ."
*418 Yang , 701 N.W.2d at 793 (quoting Nat'l Hydro Sys. , 529 N.W.2d at 694 (emphasis added) ). But after closely analyzing our precedent, we conclude that we have never given effect to a broader rule than we set forth in Farmington . The only rule that we have applied has been whether the parties expressed their intent in "clear and unequivocal terms," not whether the language in the clause could have "no other meaning ascribed to it." Yang , 701 N.W.2d at 791, 791 n.5 (determining that the indemnity clauses were "not enforceable because the language [wa]s not clear and unequivocal"); Nat'l Hydro , 529 N.W.2d at 694 ("The key question ... is whether the ... provision is clear and unequivocal or whether it is not."). Moreover, in National Hydro , we held that the indemnity clause was unenforceable and reaffirmed that we would "continue to require the parties to such an indemnity agreement to express this intent in a clear and unequivocal manner." 529 N.W.2d at 694 (noting that we are "reluctant to impose indemnity unless we are able to identify some specific language expressing an intent to indemnify the indemnitee for claims arising out of its own negligence" (citations omitted) ).
Accordingly, we emphasize that an indemnitor like Tower Tap must be able to read the express language of an indemnity clause and directly conclude, without inference, that it accepts the additional risk and costs related to defending against potential claims against the indemnitee (London Road) for the indemnitee's own negligence that may arise out of the contract. In other words, the contract must contain express language stating that the clause requires indemnification for the indemnitee's own negligence; indemnity cannot be established by implication. Compare The American Heritage Dictionary of the English Language 883 (5th ed. 2011) (defining "imply" to mean "[t]o express or state indirectly" and "[t]o make evident indirectly"), with id. at 626 (defining "express" to mean "[d]efinitely and explicitly stated" and "[p]articular; specific").
An implication requires a two-step process: (1) reading express language; and (2) inferring a conclusion that is not expressly stated. The rule we have adopted requires only one step. Requiring express language ensures that the indemnitor is fairly apprised of additional liability it takes on by accepting the terms of the contract.
II.
We next interpret the rental agreement's indemnity clause to determine whether it includes an express provision showing the parties' intent for Tower Tap to indemnify London Road for London Road's own negligence. The rental agreement's indemnity clause provides:
HOLD HARMLESS/INDEMNITY. You assume all risks associated with the possession, use, transportation and storage of the Equipment. ACCORDINGLY, YOU HEREBY WAIVE ANY AND ALL LIENS AND CLAIMS ARISING FROM OR ASSOCIATED WITH, AND AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS THE RENTAL COMPANY FROM AND AGAINST, ANY AND ALL LIABILITIES, CLAIMS, DAMAGES, LOSSES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES, CLAIMS FOR BODILY INJURY(IES) (INCLUDING DEATH), PROPERTY DAMAGE, LOSS OF TIME AND/OR INCONVENIENCE) RESULTING FROM OR ARISING IN CONNECTION WITH SUCH POSSESSION, USE, TRANSPORTATION AND/OR STORAGE, REGARDLESS OF THE CAUSE AND INCLUDING ANY INJURIES AND/OR DAMAGES SUFFERED BY YOU, YOUR EMPLOYEES AND/OR
*419 ANY THIRD PARTY(IES), EXCEPT TO THE EXTENT DIRECTLY RESULTING FROM OUR INTENTIONAL MISCONDUCT.
London Road argues that the indemnity provision clearly and unequivocally covers claims for London Road's own negligence. It specifically contends that the provision's broad language, in addition to the explicit exception for intentional misconduct, must mean that the clause covers everything but London Road's intentional misconduct, including London Road's negligence. We disagree. Applying our rule of strict construction, we conclude that the rental agreement's indemnity provision does not include express language to show that Tower Tap clearly and unequivocally intended to indemnify London Road for London Road's own negligence. Rather, the scope of the provision is equivocal and did not fairly apprise Tower Tap of the scope of the provision.
Like the indemnity provisions in Yang , the indemnity provision here does not expressly refer to "negligence," and it does not expressly state that Tower Tap agreed to indemnify London Road for London Road's own acts or omissions. See Yang , 701 N.W.2d at 791 n.5. Although the indemnity provision did not need to use the word "negligence," the contract needed to fairly apprise Tower Tap, in clear and unequivocal language, that the provision made Tower Tap liable for claims against London Road related to London Road's own conduct. See Johnson , 294 N.W.2d at 288. But here, the indemnity provision did not fairly apprise Tower Tap of the scope of the provision because it did not link the broad language to London Road's own acts or omissions.
Although the exception for London Road's "intentional misconduct" expressly informed Tower Tap that it was not obligated to indemnify London Road for London Road's "intentional misconduct," the exception does not expressly state whether the provision covers claims related to London Road's negligence. See Farmington , 281 N.W.2d at 842. Simply excepting London Road's "intentional misconduct" from the broad provision does not make the provision any more express regarding London Road's negligence .
Additionally, like in National Hydro and Yang , the rental agreement's indemnity provision included limiting language that put the "scope of [the] indemnity in question" and made the provision's language equivocal and unenforceable. Nat'l Hydro , 529 N.W.2d at 694 ; see Yang , 701 N.W.2d at 791 n.5. The indemnity provision here applied broadly to "ANY AND ALL LIABILITIES, CLAIMS, DAMAGES, LOSSES, COSTS AND EXPENSES." Yet the provision limited indemnity to only liability "RESULTING FROM OR ARISING IN CONNECTION WITH SUCH POSSESSION, USE, TRANSPORTATION AND/OR STORAGE." The indemnity provision does not specify exactly whose possession, use, transportation, or storage is covered, but other provisions in the rental agreement gave Tower Tap the right to possess the tables, and therefore the right to use, transport, and store the rented tables for the period of the contract. The indemnity provision therefore could be read to limit liability to that "RESULTING FROM OR ARISING IN CONNECTION WITH [Tower Tap's] POSSESSION, USE, TRANSPORTATION AND/OR STORAGE." Consequently, this limiting language calls into question the scope of the indemnity provision. We cannot say that the provision clearly and unequivocally shows the parties' intent for Tower Tap to indemnify London Road for claims that were unrelated to Tower Tap's possession, use, transportation, or storage *420 of the tables. See Nat'l Hydro , 529 N.W.2d at 694.
By contrast, the contract's exculpatory clause,[7] which directly follows the indemnity clause at issue here, includes an express statement that the clause covers London Road's own negligence and does not cover London Road's intentional misconduct: "INCLUDING WITHOUT LIMITATION, ANY AND ALL CLAIMS ARISING FROM OR IN CONNECTION WITH OUR NEGLIGENCE (OTHER THAN OUR INTENTIONAL MISCONDUCT)." (Emphasis added.) This language is clear and unequivocal.
The inclusion of this express provision in the exculpatory clause, and the absence of a similar express provision in the indemnity clause, raises doubt as to whether the parties intended for Tower Tap to indemnify London Road for its own negligence. See Yang , 701 N.W.2d at 792 n.6 (noting that indemnity clauses are subject to greater scrutiny than exculpatory clauses because they create an additional obligation for a party rather than just limiting potential causes of action). If the parties intended the same coverage as the exculpatory provision, they could have used similar express language in the indemnity provision. But they did not. See River Valley Truck Ctr., Inc. v. Interstate Cos., Inc. , 704 N.W.2d 154, 165 (Minn. 2005) ("We are required to determine the meaning of what is written in the instrument, not what was intended to be written." (citation omitted) (internal quotation marks omitted) ).
Accordingly, under our rule of strict construction, we conclude that the indemnity provision is unenforceable against Tower Tap because it does not include express language that clearly and unequivocally shows the parties' intent for Tower Tap to be financially responsible to London Road for London Road's own negligence. We hold that the district court erred in granting summary judgment to London Road and in awarding, under the indemnity clause, London Road the attorney fees and costs incurred in defending itself against DeWitt's claims.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court to vacate the summary judgment on London Road's contractual indemnity claim and the judgment ordering Tower Tap to indemnify London Road for costs and attorney fees.
Reversed and remanded.

The caption in this case uses a lowercase "w" in "Dewitt," but because the parties capitalize the "w" in "DeWitt" in their briefs, we do the same.

"[R]es ipsa loquitur" is the "doctrine providing that, in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." Res ipsa loquitur, Black's Law Dictionary (10th ed. 2014). We have held that to succeed under the doctrine, "the claimant must prove three pre-conditions to its application: (1) that ordinarily the injury would not occur in the absence of negligence; (2) that the cause of the injury was in the exclusive control of the defendant; and (3) that the injury was not due to plaintiff's conduct." Hoven v. Rice Mem'l Hosp. , 396 N.W.2d 569, 572 (Minn. 1986).

The district court also dismissed all of DeWitt's claims against London Road and DeWitt's res ipsa loquitur claim against Tower Tap on summary judgment. In a subsequent order, the district court granted Tower Tap's motion for attorney fees and costs in connection with a motion to compel DeWitt to provide medical discovery and ordered that the fees be paid by DeWitt's attorney. None of these rulings are at issue here.

The court of appeals also (1) affirmed the district court's conclusions regarding the enforceability of the rental agreement's exculpatory clause; (2) affirmed the district court's award of attorney fees and costs as a discovery sanction for DeWitt's failure to provide unlimited medical releases; and (3) reversed and remanded the district court's dismissal of DeWitt's res ipsa loquitur claim against Tower Tap. Dewitt , 899 N.W.2d at 892. We do not review these holdings.

"[I]ndemnity" is the "duty to make good any loss, damage, or liability incurred by another" and the "right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty." Indemnity , Black's Law Dictionary (10th ed. 2014). To "indemnify" means "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default," "[t]o promise to reimburse (another) for such a loss," and "[t]o give (another) security against such a loss." Indemnify , Black's Law Dictionary (10th ed. 2014). An "indemnitor" is "someone who indemnifies another," Indemnitor , Black's Law Dictionary (10th ed. 2014), and an "indemnitee" is "[s]omeone who receives indemnity from another," Indemnitee , Black's Law Dictionary (10th ed. 2014) (emphasis added).

Three of these cases involved construction contracts between contractors and subcontractors. See Nat'l Hydro , 529 N.W.2d at 690 ; Johnson , 294 N.W.2d at 286 ; Farmington , 281 N.W.2d at 838. Notably, "[a]ny such indemnity agreement signed after August 1, 1984 ... is subject to the restrictions of Minn. Stat. § 337.02 (1994)." Katzner v. Kelleher Constr. , 545 N.W.2d 378, 381 (Minn. 1996). The statute prohibits a party in a construction contract from being contractually indemnified "for its own actions." Id.

An "exculpatory clause" is "[a] contractual provision relieving a party from liability resulting from a negligent or wrongful act." Exculpatory clause , Black's Law Dictionary (10th ed. 2014).